# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN WILLIAM BAKER, JR.,

        Defendant-Appellant.

UNPUBLISHED
January 13, 2015

No. 318688
Crawford Circuit Court
LC No. 12-003458-FH

Before: TALBOT, C.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant, John William Baker, Jr., appeals by right his jury convictions of larceny of property valued at more than $20,000, MCL 750.356(2)(a), possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and trespassing, MCL 750.552. The trial court sentenced Baker as a habitual offender, second offense, MCL 769.10, to serve 13 months to 15 years in prison for the larceny conviction, 24 months in prison for the felony-firearm conviction, and to serve 30 days for the trespass conviction. The trial court also ordered him to pay $25,000 in restitution. For the reasons more fully explained below, we affirm Baker's convictions and sentences, but vacate the order of restitution.

## I. BASIC FACTS

Baker's convictions arise from the killing of a deer on land owned by a private hunting ranch called Valhalla Lodge. The lodge's property is enclosed by a ten foot fence and contains some large deer. According to the owner, Charles Keefer, a hunting package for a 21-point buck sells for $25,000. The package may include pickup at the airport, lodging at Valhalla, meals, and a guide to assist a guest with finding and field dressing a deer.

In October 2012, Baker and William Fessenden were hunting on property owned by Terry Nephew, which was adjacent to the lodge's property. They saw a 21-point buck on the lodge's property and shot it. They then went through the fence and field dressed the deer; they took the deer's antlers and 150 pounds of meat.

Two days later, a lodge employee, Jacob Angerer, found the carcass about 30 or 40 yards from the fence line. Angerer saw that someone had cut an opening in the fence and saw deer's blood and hair on the opening. Angerer checked the fence line and came across Baker, Keith

-1-

Stuart, and Nephew, who said they were looking for a lost dog. When Angerer informed the men that police officers had been called and were on the way, the three men fled, leaving behind the guns they were carrying. Officers recovered the firearms and three bullets from the deer's carcass were matched to one of the firearms.

Sergeant Shon Chmielewski testified that he questioned Baker later that day at the trailer where Baker was staying. He found the deer's antlers underneath the trailer. According to Chmielewski, Baker initially denied shooting the deer, but then admitted to it. Baker gave a written statement and a videotaped statement.

At trial, Baker denied shooting the deer. He claimed that he only confessed after police officers intimidated him into confessing by threatening to arrest his father for the shooting. The jury rejected Baker's defense and found him guilty as noted above.

Baker now appeals.

## II. PROSECUTORIAL ERROR

Baker first asserts that the prosecutor erred by overcharging him. Specifically, Baker argues that "[w]here two statutes prohibit the same conduct, a defendant must be charged under the more specific, most recently enacted statute," citing *People v Patterson*, 212 Mich App 393, 394-395; 538 NW2d 29 (1995). Under this rule, Baker maintains, the prosecutor had to charge him with the "more specific" charge of larceny of livestock, MCL 750.357a, or the killing of an animal, MCL 750.50b. Because Baker did not preserve this argument by presenting it to the trial court, our review is for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

However, the statutes Baker cites do not prohibit the same conduct. *Patterson*, 212 Mich App at 394-395. The statutory definition of livestock for the crime of larceny of livestock does not include deer. MCL 750.357a. Nevertheless, Baker contends that the statute could apply because the definition does not exclude deer. This argument disregards the well-settled maxim of statutory interpretation *expressio unius est exclusio alterius*, i.e., to express one thing is to exclude another. See *Johnson v Recca*, 492 Mich 169, 176 n 4; 821 NW2d 520 (2012). Similarly, MCL 750.50b does not apply to the facts of this case. That statute includes elements that are absent from the larceny statute (killing an animal), and larceny includes elements absent from MCL 750.50b (the intent to permanently deprive, asportation, and value). Thus, the statutes plainly prohibit different conduct. Accordingly, the prosecutor had the discretion to charge Baker under any or all of the statutes and, in the absence of extraordinary circumstances not present here, this Court will not interfere with the prosecutor's exercise of discretion. *People v Allan*, 158 Mich App 472, 477; 404 NW2d 266 (1987).

Baker has not shown that the prosecutor committed plain error warranting relief.

## III. SUFFICIENCY OF THE EVIDENCE

Baker next argues that there was insufficient evidence to support his larceny conviction. When reviewing a sufficiency challenge, this Court reviews the evidence "de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). This Court does not revisit credibility issues on appeal. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Rather, we are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Baker contends the prosecution failed to present evidence to establish that the deer was worth more than $20,000. In *People v Johnson*, 133 Mich App 150, 153; 348 NW2d 716 (1984), the Court explained how the value of property is determined for larceny:

> While the larceny statute itself does not provide a guide for determining the value of property which is the subject of a theft, case law supports the use of fair market value as the relevant standard when such a value exists. Generally, proof of value is determined by reference to the time and place of the offense. Value has been interpreted to mean the price that the item will bring on an open market between a willing buyer and seller. [citations omitted.]

At trial, Keefer testified that a guest would have to pay $25,000 to shoot a deer the size of the one that Baker killed. Angerer similarly testified that "it would be a minimum [$]20,000 to $25,000" "just for the deer," adding that several customers a year pay that kind of money for this size deer. And DNR Officer John Huspen testified that he understood that "a deer similar to [the deer in this case] would be upwards of probably 25 to $30,000 if they were to allow somebody to take that deer." When viewed in a light most favorable to the prosecution, this testimony was sufficient to support the jury's finding. Contrary to Baker's assertion, it is not the value of the meat or the value of the antlers alone that establishes the value of the deer. Baker did not steal a deer carcass; he killed a live deer, destroying that deer's value as the subject of a hunt.

The trial court properly submitted the charges to the jury.

## IV. EVIDENTIARY ERROR

Baker also argues the trial court deprived him of a fair trial by allowing the admission of evidence related to his prior conviction for assaulting, resisting, or obstructing an officer. Baker did not preserve this claim of error by objecting before the trial court. Therefore, the erroneous admission of the evidence will only warrant relief if the error was plain and affected the outcome of the proceeding. *Carines*, 460 Mich at 763.

At trial, the prosecution played a video recording of Chmielewski's interview with Baker. In the video, Chmielewski identifies Baker's prior conviction. We agree that it was improper to permit the jury to hear about this conviction, but we do not agree that the error warrants relief.

The admission was not particularly egregious or prejudicial and, given the overwhelming evidence that Baker actually shot the deer and that the deer was worth more than the statutory amount, it is unlikely that the error improperly influenced the jury's verdict. *Id.* at 763.

## V. EFFECTIVE ASSISTANCE OF COUNSEL

Baker next argues that his trial lawyer was ineffective. Because the trial court did not hold a hearing on this claim of error, our review is limited to mistakes that are apparent on the record. *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004).

Baker argues that his lawyer's performance was deficient in several ways: (1) his lawyer failed to file a motion to suppress his confession or request an evidentiary hearing on its admissibility, (2) he failed to file a motion to dismiss on the basis of the deer's value being below $20,000, (3) he filed a defective notice of alibi defense, (4) he failed to call alibi witnesses after they were identified to the jury, and (5) he failed to obtain video evidence to support the alibi defense before the videotapes were erased.

Effective assistance of counsel is presumed and a defendant claiming ineffective assistance is required to overcome a strong presumption that sound trial strategy motivated counsel's conduct. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). To establish ineffective assistance, Baker must show that his lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864.

Citing the factors listed in *People v Smith*, 124 Mich App 723, 725; 335 NW2d 137 (1983), Baker contends that his lawyer should have challenged whether his confession was voluntarily made. But Baker does not apply these factors to the particulars of his case or otherwise show that there is a reasonable probability that his lawyer would have been successful. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (citation and internal quotation marks omitted). Accordingly, Baker's argument is insufficient to establish that his lawyer's decision not to contest the validity of the confession fell below an objective standard of reasonableness under prevailing professional norms or that there is a reasonable probability that the outcome of the proceedings would have been different. *Gioglio*, 296 Mich App at 22.

Moreover, as already discussed, there was sufficient evidence to support the jury's finding that the deer was worth more than $20,000. Thus, contrary to Baker's assertion, the larceny charge was supported by the evidence and, therefore, his lawyer cannot be faulted for failing to request its dismissal on that basis. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Baker also asserts that his counsel "failed to prepare the case for trial," noting only that his lawyer's notice of alibi defense did not include specific information as to the place at which Baker claimed to have been at the time of the alleged offense, as required under MCL 768.20(1).

Baker fails to provide any explanation as to how the allegedly defective notice has any bearing here, except to say that it is "evidence" that counsel was unprepared. Moreover, it was never determined that the notice of alibi was defective. In fact, Baker was allowed to present an alibi defense.

On a related point, Baker asserts that his lawyer was ineffective for failing to call alibi witnesses, but acknowledges that his lawyer actually did call alibi witnesses. He disregards these witnesses because they were all family and so could all have their credibility questioned. Baker provides a list of names of people he asserts should have been called as alibi witnesses, but he has provided no affidavit or anything else from any of these people to indicate what they would have testified to, let alone whether it would be favorable to him. Thus, any argument regarding these potential witnesses amounts to nothing more than speculation. See *Gioglio*, 296 Mich App at 24-25 (noting that the defendant bears the burden to establish the factual predicate for his claim).

Finally, Baker states that his lawyer was ineffective because he failed to secure a video from the surveillance system at a storage unit, which he asserts would have provided an alibi. However, Baker has provided no evidence beyond his conjecture that any such video evidence ever existed. Because his argument concerning the video tapes is pure speculation, he has failed to show that his lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*.

## VI. SENTENCING

Baker also argues that the trial court erred when it scored offense variable (OV) 16. This Court reviews a trial court's factual findings underlying its scoring of an offense variable for clear error; however, this Court reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Under MCL 777.46(1)(c), the trial court had to score ten points if, in relevant part, Baker destroyed property with a "value of more than $20,000." The trial court explained that there was "adequate evidence that the deer was valued at more than $20,000" and, for that reason, denied Baker's objection to the score. On this record, there was ample evidence to support the trial court's finding.

## VII. RESTITUTION

Finally, we agree with Baker's contention that the trial court erred when it ordered him to pay restitution of $25,000. The trial court had an obligation to order restitution, *People v Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2012, but the restitution must be for actual losses, *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007). Here, while there was evidence that the deer was worth $25,000, it is not clear that the lodge's profits after all expenses would amount to $25,000—that is, it is not clear that the lodge actually suffered a loss of $25,000. In any event, after Baker objected to the restitution order, the trial court reserved the issue and stated that it expected "the prosecutor to schedule" a restitution hearing, but the hearing never occurred. Accordingly, we vacate the portion of the judgment of sentence ordering $25,000 in restitution and remand so that the trial court may conduct a restitution hearing.

Because there were no errors warranting relief, we affirm Baker's convictions and his sentences.  However, we vacate the judgment of sentence to the extent that it ordered Baker to pay $25,000 in restitution and remand for a hearing to determine the proper amount of restitution.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly