PEOPLE v GIOGLIO (ON REMAND)

Docket No. 293629. Submitted October 19, 2011, at Lansing. Decided
March 20, 2012, at 9:05 a.m. Remanded for resentencing, 493 Mich
864.

Jeffrey Paul Gioglio was convicted by a jury in the Kalamazoo Circuit
Court of two counts of second-degree criminal sexual conduct
(CSC-II) and one count of attempted CSC-II. At trial, defense
counsel did not cross-examine the child victim and did not present
any witnesses or evidence. Gioglio moved for a new trial, arguing
that his original defense counsel had provided ineffective assis-
tance. The court, Pamela L. Lightvoet, J., denied the motion, and
Gioglio appealed that decision. The Court of Appeals, M. J. KELLY,
P.J., and BORRELLO, J. (K. F. KELLY, J., dissenting), determined that
defense counsel had failed to subject the prosecutor's case to
meaningful adversarial testing, presumed accordingly that Gioglio
had suffered prejudice as provided under *United States v Cronic*,
466 US 648, 658-659, 666 (1984), and reversed and remanded the
case for a new trial. 292 Mich App 173 (2011). The Supreme Court
determined that it was error to presume prejudice under *Cronic*
and reversed and remanded the case to the Court of Appeals for
consideration of whether defense counsel's performance was inef-
fective under the test set forth in *Strickland v Washington*, 466 US
668, 687, 691-692 (1984), in addition to consideration of Gioglio's
remaining issues on appeal. 490 Mich 868 (2011). The Court of
Appeals remanded the case to the trial court for resolution of
certain key factual disputes in an unpublished order, entered
November 15, 2011 (Docket No. 293629). The trial court resolved
the issues.

On remand, the Court of Appeals *held*:

1. The United States and Michigan Constitutions, US Const,
Am VI; Const 1963, art 1, § 20, guarantee that every person
charged with a crime is entitled to the effective assistance of a
lawyer in a criminal proceeding, and a violation of that right
occurs under *Strickland* when counsel's conduct so undermined
the proper functioning of the adversarial process that the trial
cannot be relied on as having produced a just result. To
establish a claim of ineffective assistance of counsel, the defen-
dant must show that counsel's representation fell below an

objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reviewing court must strongly presume that counsel's conduct falls within the wide range of reasonable professional assistance because there are numerous ways to provide effective assistance in any given case. A trial counsel's acts or omissions fall within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission, there might have been a legitimate strategic reason for it. To prevail, the defendant must demonstrate that there is a reasonable probability that the outcome would have been different in the absence of the deficient performance.

2. Gioglio was not denied the effective assistance of counsel because he failed to establish that any of his counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. Gioglio failed to establish that defense counsel had betrayed his confidential communications to the prosecutor, that defense counsel had, or acted on, a bias against him, or that defense counsel's decision to not cross-examine the complainant fell below an objective standard of reasonableness under prevailing professional norms. The trial court's finding that any statements defense counsel made to the prosecutor related to Gioglio's ability to enter a valid plea was given deference because resolution of the issue involved a matter of credibility. While Gioglio's allegations concerning bias were compelling, the trial court's finding that defense counsel's actions demonstrated no bias toward Gioglio was also entitled to deference as an issue of credibility. The trial court's determination that defense counsel's decision to not cross-examine the minor complainant was part of a reasonable trial strategy was not clearly erroneous. Because the trial court was present throughout the original trial and on remand, it was in a superior position to judge the evidence and the demeanor of the lawyers.

3. Under MCL 769.10, a trial court may enhance the maximum sentence imposed for habitual offenders. A trial court necessarily abuses its discretion if it applies MCL 769.10 and enhances a sentence under the mistaken belief that it is required to do so. However, express approval of a trial court's actions constitutes a waiver that extinguishes any error. Although it was not clear on the record whether the trial court enhanced Gioglio's sentences at a resentencing hearing under the mistaken belief that enhance-

ment was required, Gioglio waived any error when his defense counsel indicated that she was in agreement with the new maximum sentences imposed.

Affirmed.

. K. F. KELLY, J., concurred in the result only.

1. CONSTITUTIONAL LAW — RIGHT TO COUNSEL — INEFFECTIVE ASSISTANCE OF COUNSEL.

The United States and Michigan Constitutions guarantee that every person charged with a crime is entitled to the effective assistance of a lawyer in a criminal proceeding, and a violation of that right occurs under the test set forth in *Strickland v Washington*, 466 US 668, 687, 691-692 (1984), when defense counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result; to establish a claim of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reviewing court must strongly presume that counsel's conduct falls within the wide range of reasonable professional assistance because there are numerous ways to provide effective assistance in any given case; a trial counsel's acts or omissions fall within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission, there might have been a legitimate strategic reason for it; to prevail, the defendant must demonstrate that there is a reasonable probability that the outcome would have been different in the absence of the deficient performance (US Const, Am VI; Const 1963, art 1, § 20).

2. SENTENCES — HABITUAL-OFFENDER SENTENCE ENHANCEMENTS — DISCRETION TO IMPOSE.

Under MCL 769.10, a trial court may enhance the maximum sentence for habitual offenders, but a trial court necessarily abuses its discretion if it applies MCL 769.10 and enhances a sentence under the mistaken belief that it is required to do so.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jeffrey R. Fink*, Prosecuting Attorney, and *Cheri L. Bruinsma*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Desiree M. Ferguson*) for defendant.

ON REMAND

Before: M. J. KELLY, P.J., and K. F. KELLY and BORRELLO, JJ.

M. J. KELLY, P.J. This is the second time that defendant Jeffrey Paul Gioglio's appeal is before this Court. In our prior opinion, the majority examined in detail the evidence and events surrounding Gioglio's trial; for the sake of brevity, we will not restate the facts here. See *People v Gioglio*, 292 Mich App 173, 176-192; 807 NW2d 372 (2011). The majority determined that Gioglio's trial lawyer, Susan Prentice-Sao, did not subject the prosecution's case to meaningful adversarial testing. *Id.* at 201. After concluding that Prentice-Sao had failed in this regard, the majority presumed that Gioglio suffered prejudice as provided under *United States v Cronic*, 466 US 648, 658-659, 666; 104 S Ct 2039; 80 L Ed 2d 657 (1984). *Gioglio*, 292 Mich App at 202. The dissent disagreed with the majority's conclusion that prejudice should be presumed under *Cronic*. Instead, the dissent would have analyzed Gioglio's claim that Prentice-Sao did not provide effective assistance of counsel under the test stated in *Strickland v Washington*, 466 US 668, 687, 691-692; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *Gioglio*, 292 Mich App at 236-237 (K. F. KELLY, J., dissenting). Our Supreme Court agreed with the dissent and determined that it was error to presume prejudice under *Cronic*. See *People v Gioglio*, 490 Mich 868 (2011). Accordingly, it remanded the case back to this Court "for consideration of whether defense counsel's performance was ineffective under *Strickland*" in addition to consideration of Gioglio's remaining issue on appeal. *Id.*

After our Supreme Court remanded the case to this Court, we determined that before we could properly analyze Gioglio's claims under the test stated in *Strickland*, it would be necessary to remand this case back to the trial court for resolution of certain key factual disputes. See *People v Gioglio*, unpublished order of the Court of Appeals, entered November 15, 2011 (Docket No. 293629). In an opinion and order entered on January 11, 2012, the trial court resolved those factual disputes.

We now consider Gioglio's claim that he did not receive the effective assistance of counsel that is guaranteed to all criminal defendants. For the reasons more fully explained below, we conclude that Gioglio failed to establish that any specific act or omission by Prentice-Sao amounted to the ineffective assistance of counsel. Accordingly, he is not entitled to a new trial on that basis. Further, because there were no other errors warranting relief, we affirm.

### I. THE SCOPE OF OUR REVIEW

In our order remanding this matter to the trial court, we ordered the trial court to make "more definite findings on the factual questions identified in [the] order . . . ." *Id.* We identified the factual issues as whether Prentice-Sao actually "told the prosecutor that she believed that her client was guilty," whether she "had a bias against [Gioglio] and acted on that bias," and whether she "expressed enthusiasm for [Gioglio's] lengthy sentence." *Id.* We also noted in passing that the trial court "did not address a series of other actions that [Prentice-Sao] took or might have failed to take." *Id.* We then cited, by way of example, footnote 7 of the majority opinion. *Id.*, citing *Gioglio*, 292 Mich App at 202 n 7. Although we did not specifically direct the trial court to

address the acts and omissions identified in footnote 7, the prosecution argues in its supplemental brief that it was "appropriate" for the trial court to choose not to address those issues. Specifically, the prosecution maintains that the issues identified in footnote 7 were not properly raised in Gioglio's original motion for a hearing on his claim of ineffective assistance of counsel and, therefore, the trial court did not have to address them. For the same reason, the prosecution argues that this Court should limit its analysis to those claims that Gioglio properly raised in his original appeal.

This Court is an error-correcting court that has broad authority to take corrective action with regard to lower court proceedings. See *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002); see also *Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 168; 533 NW2d 339 (1995) ("We are also mindful that this Court functions as a court of review that is principally charged with the duty of correcting errors."). We have the power to "exercise any or all of the powers of amendment of the trial court or tribunal," to "permit amendment or additions to the grounds for appeal," and to "permit amendments, corrections, or additions to the transcript or record." MCR 7.216(A)(1), (3), and (4). This Court also has the power to "enter *any judgment* or *order* or grant further or different relief as the case may require," MCR 7.216(A)(7) (emphasis added), and we may enforce our orders through our contempt power, see *In re Contempt of Dougherty*, 429 Mich 81, 91 n 14; 413 NW2d 392 (1987). Therefore, this Court has the authority to order the trial court to make findings and address issues that were not raised in the original motion for an evidentiary hearing.

In addition, although we will not normally consider issues that the trial court did not have the opportunity to address, this Court can—and will—overlook preser-

vation requirements if it is in the interests of justice to do so. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Indeed, this Court may even raise and address issues sua sponte. See *City of Dearborn v Bacila*, 353 Mich 99, 118, 90 NW2d 863 (1958) (recognizing that there "is no hard and fast rule that appellate courts, sitting either in law or equity, cannot and, hence, do not raise and decide important questions *sua sponte*"); see also *People v Yost*, 278 Mich App 341, 388; 749 NW2d 753 (2008) (addressing an issue sua sponte because the Court was convinced that the trial court committed plain error and that it was likely to repeat the error on remand). Accordingly, the fact that Gioglio might not have raised a particular issue before the trial court, while certainly relevant to this Court's resolution of a claim of error, does not necessarily preclude this Court from granting relief. It is for this Court alone to determine whether and to what extent an issue was improperly preserved, waived, or otherwise ineligible for appellate relief on procedural grounds. And, as we are bound to follow the dictates of our Supreme Court's orders, the trial court was bound to follow the dictates of this Court's order "in the utmost good faith." See *Werkhoven v City of Grandville (On Remand)*, 65 Mich App 741, 744; 238 NW2d 392 (1975); see also *Sokel v Nickoli*, 356 Mich 460, 464; 97 NW2d 1 (1959) ("The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court."). Thus, contrary to the prosecution's claims, the trial court was not free to disregard our order on the basis of a belief that an issue addressed by our order was not properly raised. Nevertheless, as we have already recognized, we did not specifically order the trial court to address the issues identified in footnote 7; rather, we cited that footnote in

passing and in the general context of the need for a remand. And we are satisfied that the trial court made a good-faith effort to comply with our order on remand. *Werkhoven*, 65 Mich App at 744.

Moreover, the prosecution's fear that we might address the issues that were identified in footnote 7 is unfounded. This Court will exercise its ability to address unpreserved issues only in the most exceptional circumstances. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993); see also *Bacila*, 353 Mich at 118 (recognizing that appellate courts have the power to address unpreserved issues, but stating that the "power is exercised sparingly" and with full realization of the restrictions and limitations inherent in the power's employment). In our prior opinions, both the majority and the dissent recognized that Gioglio had not properly raised those issues and, accordingly, that those errors could not serve as a basis for granting relief. See *Gioglio*, 292 Mich App at 202-203 & n 7 (M. J. KELLY, P.J.); *id.* at 224 n 3 (K. F. KELLY, J., dissenting). As such, we shall limit our analysis of Gioglio's claim of ineffective assistance to those acts and omissions that he arguably raised in his original brief on appeal.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARDS OF REVIEW

Whether a defendant's trial counsel was ineffective is not a matter of historical fact; rather, both the performance and prejudice components of the ineffectiveness inquiry involve mixed questions of fact and law. *Strickland*, 466 US at 698. This Court reviews de novo, as a question of constitutional law, the determination that a particular act or omission fell below an objective stan-

dard of reasonableness under prevailing professional
norms and prejudiced the defendant's trial. *People v
Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008)
(noting that appellate courts review the facts underly-
ing a trial court's decision on a claim of ineffective
assistance of counsel for clear error, but review de novo,
as a question of constitutional law, the trial court's
determination that the conduct amounted to ineffective
assistance); see also *Padilla v Kentucky*, 559 US ___;
130 S Ct 1473, 1486; 176 L Ed 2d 284 (2010) (holding
that as a matter of law the failure to correctly advise a
client about the possibility that the client will be
deported if he or she pleads guilty to a particular charge
falls below an objective standard of reasonableness
under prevailing professional norms). When there has
been no hearing on the defendant's ineffective-
assistance claims,[1] there are no findings to which this
Court must defer; as such, this Court will determine
whether the performance of defendant's trial counsel
amounted to the ineffective assistance of counsel by
examining the lower court record alone. See *People v
Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d
611 (2003) (stating that when there has been no hear-
ing below, the appellate court's review is limited to
mistakes that are apparent on the record). However,
when, as here, the trial court has conducted a *Ginther*
hearing to resolve factual disputes concerning the con-
duct of the lower court proceedings, this Court will
review the trial court's findings for clear error. MCR
2.613(C); *People v LeBlanc*, 465 Mich 575, 579; 640
NW2d 246 (2002). The clear-error standard is highly
deferential; an appellate court will only determine that
a trial court's finding is clearly erroneous when, after a

---

[1] Michigan courts typically refer to hearings on a claim of ineffective
assistance of counsel as *Ginther* hearings after our Supreme Court's
decision in *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

review of the entire record, it is left with the definite and firm conviction that the trial court has made a mistake. *People v McSwain*, 259 Mich App 654, 682-683; 676 NW2d 236 (2003).

### B. THE TEST UNDER *STRICKLAND*

The United States and Michigan Constitutions both guarantee that every person charged with a crime will have a lawyer's assistance throughout the criminal proceedings. US Const, Am VI; Const 1963, art 1, § 20. Indeed, the right to have the assistance of a lawyer is so fundamental to the integrity of our system that the state must provide the accused with a lawyer if the accused cannot afford to hire his or her own lawyer. See *Gideon v Wainwright*, 372 US 335, 344; 83 S Ct 792; 9 L Ed 2d 799 (1963). But the mere appointment of a lawyer to assist the accused is not enough to satisfy the Sixth Amendment right; the right necessarily includes the right to have assistance that is within the range of competence demanded of lawyers in criminal cases. *Cronic*, 466 US at 654-655. As such, the Sixth Amendment right to have the assistance of a lawyer in a criminal proceeding includes the right to have effective assistance. *Strickland*, 466 US at 686. And it is a violation of the right to have the assistance of counsel when a criminal defendant's trial lawyer does not render adequate legal assistance. *Id.*

In the majority of situations, Michigan courts apply the test stated under *Strickland* when evaluating a defendant's claim that his or her trial lawyer did not provide effective assistance. See *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). The *Strickland* test recognizes that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 US at 686. To establish a claim of ineffective assistance of counsel, the defendant must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong of this test requires the defendant to identify those acts or omissions of counsel that the defendant alleges were not the result of reasonable professional judgment. *Id.* at 690. The reviewing court must then determine whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* Because there are countless ways to provide effective assistance in any given case, in reviewing a claim that counsel was ineffective courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to "affirmatively entertain the range of possible" reasons that counsel may have had for proceeding as he or she did. *Cullen v Pinholster*, 563 US ___; 131 S Ct 1388, 1407; 179 L Ed 2d 557 (2011). That inquiry is objective; although the reviewing court may not engage in a post hoc rationalization of the counsel's decision-making that contradicts the available evidence, neither may courts insist that counsel confirm every aspect of the strategic basis for his or her actions. *Harrington v Richter*, 562 US ___; 131 S Ct 770, 790; 178 L Ed 2d 624 (2011). Accordingly, a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the

range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission. *Pinholster*, 563 US at ___; 131 S Ct at 1407; see, e.g., *People v Vaughn*, 291 Mich App 183, 197; 804 NW2d 764 (2010) (explaining that there were several valid reasons why the defendant's trial counsel might not have objected to the trial court's decision to close the courtroom during jury voir dire and concluding on that basis that the defendant had failed to overcome the presumption that his trial counsel's decision was a matter of sound trial strategy).

The second prong of the test requires the defendant to show prejudice. *Strickland*, 466 US at 692. Under this prong, it is not enough that the defendant showed that the act or omission "had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the defendant must show that "there is a reasonable probability" that the outcome would have been different in the absence of the deficient performance. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Further, this determination must be made in consideration of the "totality of the evidence" presented to the jury and keeping in mind that some "errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695-696.

### C. APPLICATION OF *STRICKLAND*

Having explained the test applicable to claims of ineffective assistance of counsel, we shall now examine

the instances that Gioglio alleges amounted to ineffective assistance by Prentice-Sao. Although Gioglio argued that he did not receive the effective assistance of counsel under the test stated in *Strickland*, he did not separately identify or analyze the acts or omissions that he alleges to have been deficient. Instead, he merely cited the conduct that he identified in his analysis of his claim under *Cronic*. Therefore, we shall limit our review to those acts and omissions.

### 1. BETRAYAL OF ATTORNEY-CLIENT PRIVILEGE

Gioglio argued that Prentice-Sao betrayed his attorney-client communications by telling the prosecutor that he had admitted to committing the charged conduct. We agree that a trial lawyer's decision to betray his or her client's confidential communications to the prosecutor would normally fall below an objective standard of reasonableness under prevailing professional norms. See MRPC 1.6. However, after this Court's remand, the trial court found that Prentice-Sao did not intentionally disclose any privileged communications to the prosecutor. Rather, the trial court found that the conversations did not amount to a betrayal of confidence, but appeared "to be related to plea negotiations." Thus, the trial court implicitly accepted Prentice-Sao's version of events; namely, that any statements she had made to the prosecutor were proper and related to Gioglio's ability to enter a valid plea. Because resolution of this factual dispute was a matter of credibility, we will defer to the trial court's superior ability to judge such matters. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000); MCR 2.613(C). Accordingly, given the trial court's findings, we must conclude that Gioglio has failed to establish the factual predicate of his claim—that is, he failed

to establish that Prentice-Sao actually betrayed his confidential communications to the prosecutor. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (stating that the defendant bears the burden of establishing the factual predicate for his claim of ineffective assistance).

### 2. BIAS

Gioglio also argued on appeal that Prentice-Sao had a bias against him and that the bias amounted to an actual conflict of interest under *Mickens v Taylor*, 535 US 162, 172-173, 172 n 5; 122 S Ct 1237; 152 L Ed 2d 291 (2002). Specifically, Gioglio stated that the evidence that Prentice-Sao mimicked his speech impediment, that she said she could not stand to look at him and that he made her sick, and that she expressed pleasure after he received a lengthy sentence demonstrated that Prentice-Sao had a bias against him and that her bias adversely affected her performance.

Gioglio presented compelling evidence that Prentice-Sao might have had a bias against him and acted on that bias to his detriment. And we agree that when a trial lawyer adopts the view that his client is guilty and acts on that belief, the acts taken on the basis of the bias necessarily fall below an objective standard of reasonableness under prevailing professional norms. See *Gioglio*, 292 Mich App at 205, citing *United States v Swanson*, 943 F2d 1070, 1074 (CA 9, 1991). Nevertheless, the trial court did not agree that the evidence established that Prentice-Sao "had a bias against her client and acted on that bias." The court explained that Prentice-Sao's "actions during the case and her testimony are not consistent with the allegations that her actions were affected by any bias." The trial court implicitly found Prentice-Sao's testimony that she "was

concerned about [Gioglio's] well-being throughout the case" to be credible and found that Prentice-Sao "seemed to be doing what she could to protect [Gioglio]." Again, because the trial court was in the best position to evaluate the demeanor and credibility of the witnesses, we must defer to the trial court's finding that Prentice-Sao did not have, or act on, a bias against Gioglio. *Sexton*, 461 Mich at 752. Accordingly, Gioglio has not established this claim of error.

### 3. FAILURE TO CROSS-EXAMINE

Gioglio also argues that Prentice-Sao's decision to not cross-examine the complainant fell below an objective standard of reasonableness under prevailing professional norms. He maintains that Prentice-Sao's decision was not motivated by trial strategy, but by her inability to question a child victim of sexual abuse and her contempt for him.

We can imagine numerous valid reasons why a competent lawyer—when confronted with the facts of this case—might refrain from cross-examining the complainant as a matter of trial strategy; a reasonably competent lawyer might want to avoid the appearance of bullying the witness, might believe that the complainant's testimony can best be undermined by pointing out inconsistencies with other testimony, and might want to avoid elaboration on damaging points of testimony. See, e.g., *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997) (noting that a trial lawyer's handling of witnesses is presumptively a matter of trial strategy). As such, in the absence of evidence to the contrary, we would normally presume that Prentice-Sao's decision was founded on considerations of reasonable professional judgment and end the inquiry there. See *Pinholster*, 563 US at ___; 131 S Ct at 1407

(requiring reviewing courts to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did); *Strickland*, 466 US at 689-690 (providing that reviewing courts must recognize that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). However, Gioglio presented evidence that tended to show that Prentice-Sao might have refused to cross-examine the complainant because she simply could not bring herself to do so or because she believed that her client was guilty and, for that reason, decided that it would be inappropriate to put the child through a cross-examination. If Prentice-Sao refused to cross-examine the complainant for those reasons, the decision could not be said to have been objectively reasonable under prevailing professional norms. See *Strickland*, 466 US at 688 (stating that a lawyer has a duty of loyalty to his or her client and must "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process").

In examining Gioglio's evidence, the trial court stated that it was "not convinced that [Prentice-Sao] refused to cross-examine the victim because she believed that her client was guilty or because she believed that the victim did not deserve to be put through a cross-examination." The trial court also summarized Prentice-Sao's testimony from the hearing and implicitly found that Prentice-Sao's version was credible. It then found that Prentice-Sao made the decision as part of a "reasonable trial strategy." Although we might disagree with these findings, mere disagreement is not a sufficient basis for determining that they are clearly erroneous. See *People v Farrow*, 461 Mich 202, 208-209; 600 NW2d 634 (1999) (stating that a finding is not clearly erroneous if there is sufficient support for the

finding in the record and concluding that the Court of
Appeals overstepped its review function by substituting
its judgment regarding the evidence for that of the trial
court). The trial court was present throughout the
original trial and observed the trial lawyers. It also had
the opportunity to observe the lawyers' demeanor at
the *Ginther* hearing. It was, therefore, in a superior
position to judge the evidence and we will defer to its
judgment. *Id.* at 209; MCR 2.613(C). On this record,
Gioglio has failed to establish that Prentice-Sao's deci-
sion to not cross-examine the complainant fell below an
objective standard of reasonableness under prevailing
professional norms. *Strickland*, 466 US at 688.

### D. CONCLUSION

When Gioglio's claims of ineffective assistance are
viewed in light of the trial court's resolution of the
competing factual claims, we must conclude that
Gioglio has not established that any of Prentice-Sao's
acts or omissions fell below an objective standard of
reasonableness under prevailing professional norms.
Consequently, he has not established that he did not
receive the effective assistance of counsel under the test
stated in *Strickland*. See *id.*

### III. HABITUAL-OFFENDER ENHANCEMENT

### A. STANDARDS OF REVIEW

Finally, as part of his original appeal, Gioglio argued
that the trial court erred when it determined that it had
to sentence him as an habitual offender under MCL
769.10. This Court reviews for an abuse of discretion a
trial court's decision to apply habitual-offender en-
hancements. *People v Mack*, 265 Mich App 122, 125; 695
NW2d 342 (2005).

### B. ANALYSIS

The trial court originally sentenced Gioglio using the maximum sentences without any habitual-offender enhancements. The trial court later held a new hearing to correct the maximum sentences. The trial court indicated that it gave Gioglio "the wrong maximum" and then resentenced him by increasing the maximum sentences for each conviction by 1½, as provided under MCL 769.10.

Under MCL 769.10, a trial court may—but is not required to—enhance the maximum sentences for habitual offenders. *People v Bonilla-Machado*, 489 Mich 412, 429; 803 NW2d 217 (2011). And if a trial court applies MCL 769.10 to enhance a sentence under the mistaken belief that it is required to do so, it necessarily abuses its discretion. *Id.* at 430. In this case, it is not entirely clear that the trial court enhanced Gioglio's maximum sentences under a mistaken belief that it had to apply MCL 769.10. In any event, we conclude that Gioglio waived this claim of error. After the trial court applied MCL 769.10 to Gioglio's maximum sentences, it asked if "everyone was in agreement" with the new maximums, to which Prentice-Sao replied that she was. By affirmatively agreeing with the trial court's decision to apply MCL 769.10 to enhance Gioglio's sentences, Prentice-Sao waived any claim that the trial court erred by doing so on behalf of her client. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (holding that express approval of the trial court's actions constitutes a waiver that extinguishes any error).

### IV. GENERAL CONCLUSION

Gioglio failed to establish that he did not receive the effective assistance of counsel under the test stated in

*Strickland.* Further, his trial lawyer waived any claim that the trial court did not properly exercise its discretion when applying MCL 769.10 to enhance his sentences. Therefore, we conclude that there were no errors warranting appellate relief.

Affirmed.

BORRELLO, J., concurred with M. J. KELLY, P.J.

K. F. KELLY, J. (*concurring*). I concur in the result only.