# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CODY CHRISTOPHER SMITH, also known as
KEVIN JAMES SMITH,

Defendant-Appellant.

UNPUBLISHED
February 24, 2015

No.  318676
Wayne Circuit Court
LC No.  13-003496-FH

Before:  SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant Cody Christopher Smith appeals by right his jury convictions of torture, MCL 750.85, unlawful imprisonment, MCL 750.349b, and felonious assault, MCL 750.82.  The trial court sentenced him to serve 7 to 15 years in prison for the torture conviction, 4 to 15 years in prison for the unlawful imprisonment conviction, and to serve one to four years in prison for the felonious assault conviction.  Because we conclude there were no errors warranting relief, we affirm.

Smith first argues that there was insufficient evidence to support his torture conviction. Specifically, he maintains that a rational jury could not have concluded that he inflicted either great bodily injury or severe mental pain or suffering on Joseph Cox.  Smith claims there was no evidence to suggest that Cox sustained a mental injury that substantially altered his mental functioning in a visibly demonstrable manner.

When reviewing a challenge to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.  *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

In order to convict Smith of torturing Cox, the prosecution had to prove that Smith intended "to cause cruel or extreme physical or mental pain and suffering" to Cox, inflicted "great bodily injury or severe mental pain or suffering" upon Cox, and did so while Cox was in Smith's "custody or physical control . . . ."  MCL 750.85(1).  As Smith correctly notes, there is no evidence that he and his codefendant, Russell Germano, caused great bodily injury to Cox as that term is defined under MCL 750.85(2)(c).  As such, the issue on appeal is whether there was evidence from which a reasonable jury could find that Smith intended to cause Cox cruel or

-1-

extreme severe mental pain or suffering and actually caused him to suffer severe mental pain or suffering.

The legislature defined the term "[c]ruel" to mean "brutal, inhuman, sadistic, or that which torments." MCL 750.85(2)(a). "Severe mental pain or suffering" means "a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner caused by or resulting from any of the following:"

(*i*) The intentional infliction or threatened infliction of great bodily injury.

(*ii*) The administration or application, or threatened administration or application, or mind-altering substances or other procedures calculated to disrupt the senses or the personality.

(*iii*) The threat of imminent death.

(*iv*) The threat that another person will imminently be subjected to death, great bodily injury, or the administration or application of mind-altering substances or other procedures calculated to disrupt the senses or personality. [MCL 750.85(2)(d).]

Cox testified that Smith was angry with him because he suspected that he had reported Smith's plan to shoplift from a store to the store's employees or police officers. He stated that Smith and Germano barricaded Smith into his apartment and threatened him with a knife and ratchet in order to get him to confess. They also prepared a tub of water, plugged an extension cord into an outlet, and put the other end into the tub. Cox said Smith warned him that, if he did not confess the first time, he would confess the second or third time. Cox testified that Germano then took his hand and put it into the water.

Cox testified that, when Germano dipped his hand into the bucket of water with the extension cord, he feared that he was going to die. Cox further considered jumping out of his second story window in order to escape. When Cox reported the attack to an officer, the officer, Julian Morgan, observed Cox to be teary-eyed and emotional; Morgan stated that Cox's eyes appeared bloodshot and he had to calm Cox down before he could take the report.

Although the prosecution did not present any medical evidence regarding Cox's mental injury, taking the evidence in the light most favorable to the prosecution, a rational jury could have concluded that Smith's actions actually caused Cox to experience severe mental pain or suffering. There was evidence that Smith placed Cox in fear of imminent death or great bodily injury within the meaning of MCL 750.85(2)(d)(*iii*) and MCL 750.85(2)(d)(*i*) when he aided and abetted Germano in placing Cox's hand in the water with the extension cord. There was no evidence presented to suggest that Smith knew or believed the extension cord would not serve to electrocute Cox. And Cox stated that he believed he was going to die. Further, Morgan observed that Cox was still visibly distraught when he reported the incident shortly after it occurred. Cox also stated that he was so traumatized by the incident that he could no longer bear to live in the apartment and felt compelled to move. Taking this evidence in the light most favorable to the prosecution, there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Smith tortured Cox. *Roper*, 286 Mich App at 83.

Smith next argues that his trial lawyer was ineffective. Specifically, he complains that his lawyer failed to object or request a mistrial when Cox testified that Smith had been in prison at some point in the past. He maintains that this error likely affected the outcome of his case and warrants a new trial. Because the trial court did not hold an evidentiary hearing on this claim of error, our review is limited to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864.

In order to establish this claim of error, Smith must demonstrate that his lawyer's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the acts or omissions, the result of the proceeding would have been different. *Id.* at 22. Smith must also overcome the strong presumption that his lawyer's acts or omissions constituted sound strategy. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *Gioglio*, 296 Mich App at 22. We must conclude that Smith's lawyer's acts or omissions "fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to [us], there might have been a legitimate strategic reason for the act or omission." *Id.* at 22-23.

Smith argues that his lawyer should have objected, requested a curative instruction, and requested a mistrial, after Cox noted that Smith had previously spent time in prison during the following exchange:

> *Q*. Okay. Now you indicated in a part of the statement that you only knew Mr. Smith, and Mr. Germano for two to three weeks; you remember that?
>
> *A*. Correct.
>
> *Q*. But today you testified that you knew Mr. Smith quite a while 'cause you knew his mother and grandmother, correct?
>
> *A*. He's – he's been in places I was at, we never hung out or nothing. I knew his mother, I knew of them. That's about it.
>
> *Q*. Um-hum. Isn't it true –
>
> *A*. And he went to prison, and he got back out again –

Before anyone could object, the trial court interrupted Cox and instructed the jury "to strike the last statement." The trial court added, "[a]ny part of the answer to the question that wasn't responsive is to be stricken." Later, Smith's lawyer requested a curative instruction to remind the jury that it was not to consider Cox's statement. The prosecutor stated that she did not have any objection to a curative instruction and the trial court agreed to provide it. However, later during the trial, the trial court asked Smith's lawyer: "you had an issue yesterday in terms of precautionary instruction that you wanted the Court to give pertaining to – Refresh my memory." Smith's lawyer replied, "[o]h, that's okay. Wait a minute. No. Never mind, your

-3-

Honor." However, the trial court did instruct the jury that it should not consider testimony that the trial court had stricken or excluded earlier during the trial.

Under these circumstances, Smith's lawyer did not have to object because the trial court immediately responded to Cox's testimony and, on its own initiative, ordered the statement stricken. Considering the trial court's immediate curative instruction, Smith's lawyer's counsel's choice to move on and focus on other areas of cross-examination constituted reasonable trial strategy. Indeed, focusing on the comment may have had the effect of drawing the jury's attention back to Cox's original comment, which could have been harmful to the defense. Smith's lawyer's decision to deflect the jury's attention elsewhere was reasonable trial strategy; she did not err in failing to belabor the point. See *Gioglio*, 296 Mich App at 22-23. Moreover, given that Cox's comment was unresponsive, did not involve details, and was immediately stricken from the record, we cannot agree that it would have warranted a mistrial. Therefore, such a request would have been futile and Smith's lawyer cannot be faulted for failing to make a futile motion. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Even if Smith's lawyer should have taken more aggressive action, Smith has not shown that any error prejudiced his trial. *Gioglio*, 296 Mich App at 20. Cox's comment was relatively minor in the context of all the evidence presented at trial. Further, the trial court immediately instructed the jury to disregard Cox's statement. Though Cox's comment about Smith was somewhat prejudicial, it was not particularly egregious under the circumstances. By contrast, Cox's testimony about Smith's involvement was clear and unequivocal. He testified that Smith brought in a bucket of water, submerged an extension cord in the water, and threatened to cut Cox with a knife or beat him with a ratchet while Germano dipped Cox's hand in the water. Thus, any error was harmless. *Id.*

There were no errors warranting relief.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly

-4-