# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

EDWARD LEE DICKERSON,

      Defendant-Appellant.

UNPUBLISHED
March 15, 2016

No. 324055
Wayne Circuit Court
LC No. 14-003325-FC

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant, Edward Lee Dickerson, appeals by right his bench convictions of two counts of assault with intent to do great bodily harm less than murder (Assault-GBH), MCL 750.84, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court sentenced Dickerson to serve 38 months to 10 years in prison for each Assault-GBH conviction, to serve two years in prison for the felony-firearm conviction, and to time served for the felon-in-possession conviction. For the reasons explained below, we affirm Dickerson's convictions, but remand to the trial court for determination as to whether it would have sentenced Dickerson differently had it not been constrained by the sentencing guidelines.

In March 2014, Cierra Taylor, her sister Sada Taylor, their friend Delvon Barnett, and their cousin Jaylin McNeal, were dancing in the street in front of Cierra Taylor's home in Detroit. Testimony established that Dickerson, along with others, came upon the group, and fired his pistol. Dickerson shot Cierra Taylor twice in the neck and Barnett once in the groin.

Dickerson first argues that his trial lawyer provided ineffective assistance. Specifically, he maintains that his lawyer should have questioned Barnett about his gang ties, should have confronted Cierra Taylor regarding her "fabrications," and should have impeached Sada Taylor with her inconsistent statements. Because the trial court did not hold an evidentiary hearing on Dickerson's claim of ineffective assistance, our review is limited to mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. This Court reviews de novo whether the defendant's lawyer's acts or omissions amounted to ineffective assistance. *Id.* at 19-20.

-1-

In order to establish this claim of error, Dickerson must identify acts or omissions of counsel that fell below an objective standard of reasonableness under prevailing professional norms and must show that there is a reasonable probability that, but for the unprofessional acts or omissions, the result of the proceeding would have been different. *Id.* at 22. In considering the acts or omissions, this Court must indulge a strong presumption that his trial lawyer's decision to act or refrain from acting fell within the range of reasonable professional assistance. *Id.* Indeed, we must affirmatively entertain the range of possible reasons that his lawyer may have had for proceeding as he did. *Id.* If there might have been a legitimate strategic reason for the decision to act or refrain from acting, we must conclude that Dickerson's lawyer's decision fell within the range of reasonable professional conduct. *Id.* at 22-23.

With regard to Dickerson's claim that his lawyer should have questioned Barnett about his gang ties, Dickerson relies on a police report that was not introduced below. Dickerson acknowledges that he may not expand the record on appeal, see *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999), but asks us to consider the report under MCR 7.216(A)(4). Even considering the report, it merely suggests that Dickerson's lawyer knew or should have known that Barnett might have had previous ties to gang activity. It does not, however, establish that a reasonable trial lawyer would invariably have questioned Barnett about those ties.

Dickerson's trial lawyer mounted a vigorous alibi defense, which included two alibi witnesses, cross-examination of every prosecution witness, and a strong closing argument delineating the flaws in the prosecution's case. Although a reasonable trial lawyer might have explored the potential gang ties to establish that someone other than Dickerson might have had a motive to shoot Barnett, we cannot say that no reasonable trial lawyer would have neglected to do so. Dickerson's trial lawyer might reasonably have concluded that the better strategy was to emphasize the weakness of the identification testimony and the strength of Dickerson's alibi rather than focus on a tenuous claim that Barnett's possible gang ties were somehow involved. *Gioglio*, 296 Mich App at 22-23.

Even assuming that his lawyer's failure to question Barnett about his gang ties fell below an objective standard of reasonableness, we cannot conclude that there was a reasonable probability that, had his lawyer brought this out, the outcome of the proceeding would have been different. *Id.* at 22. The trial court, sitting as the finder-of-fact, heard the testimony of Cierra Taylor, who testified that she saw Dickerson shoot the gun at her and testimony from others who clearly stated that Dickerson was driving around the area in his van immediately prior to the shooting. Given the strength of this testimony, it is unlikely that the trial court would have been swayed by an argument concerning Barnett's possible relationship with a gang.

We also do not agree that Dickerson's trial lawyer's failure to impeach Cierra Taylor with her previous "fabrications" fell below an objective standard of reasonableness. Dickerson relies on alleged inconsistencies between the testimony by Cierra Taylor and Sada Taylor concerning him. When asked at the preliminary examination whether Dickerson had any relationships with anyone close to her, Cierra Taylor testified, "I know when I first moved over there, my sister was talking to him." When the prosecutor asked, "So you didn't actually see anything, but your sister told you about some incidents [between her sister and Dickerson]," she answered, "Yes." At trial, when asked whether she had ever spoken to Dickerson, Sada Taylor testified that she "spoke to him a couple of times." Sada Taylor testified that she did not know

Dickerson's real name, but stated that they referred to him as "Wesley Snipes, though." The cited testimony shows that Sada Taylor talked to Dickerson more than once. The statements do not contradict each other. Accordingly, Dickerson's trial lawyer could not have impeached either Cierra Taylor or Sada Taylor with these statements.

Dickerson similarly notes several instances where Sada Taylor made inconsistent statements, which he claims his lawyer should have further explored. On the first day of trial, Sada Taylor testified that she saw two individuals walk from the scene of the shooting through a field to a car, which then drove off. However, on the second day of trial, she testified that one of the two people going through the field was Dickerson, and that they actually ran across the field. She also stated that Dickerson got into a van, not a car.

Given that these inconsistencies were minor, we cannot conclude that Dickerson's trial lawyer's failure to more thoroughly explore the inconsistencies fell below an objective standard of reasonableness. The fact that these statements were inconsistent was obvious and Dickerson's trial lawyer could reasonably assume that the trial court noted them without further exploration. In addition, Dickerson's lawyer might reasonably have determined that further emphasis would only result in Sada Taylor clarifying her testimony and more emphatically implicating Dickerson. That is, his lawyer's failure to impeach might have been a strategic choice, as picking at minor inconsistencies may have drawn the focus of cross-examination away from the larger inconsistencies and flaws in the prosecution's case. Thus, there might have been a legitimate strategic reason for Dickerson's lawyer's decision for proceeding in this way. *Id.* at 22-23.

Dickerson failed to establish that his trial lawyer did not provide effective assistance.

Next, Dickerson argues that the trial court impermissibly calculated the sentencing guidelines using facts that it did not find beyond a reasonable doubt. See *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). Because Dickerson did not object to the scoring of the offense variables on this basis, we will review the claim for plain error. *Id.* at 392-393.

In *Lockridge*, 498 Mich at 364-365, our Supreme Court held that, because Michigan's formerly mandatory sentencing guidelines required increasing a defendant's mandatory minimum sentence on the basis of facts not found by the jury beyond a reasonable doubt or admitted by the defendant, the mandatory aspect of the sentencing guidelines was unconstitutional. Accordingly, the sentencing guidelines are now advisory. *Id.* at 392. Under the new regime, "cases in which (1) facts admitted by the defendant and (2) facts found by the [jury] [are] sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced" are not tainted by plain error, as there is no prejudice resulting to the defendant. *Id.* at 394-395. Conversely, "cases in which facts admitted by a defendant or found by the [trier of fact] . . . were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced" constitutes potential plain error. *Id.* at 395. Therefore, defendants "who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment . . . can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* On remand, the trial court must consider whether it

"would have imposed a materially different sentence but for the unconstitutional constraint . . . ." *Id.* at 398.

Here, the trial court scored Offense Variables (OVs) 1 and 2 on the basis of facts that it found beyond a reasonable doubt; it found beyond a reasonable doubt that Dickerson discharged a firearm: "I am persuaded beyond a reasonable doubt, that the defendant . . . he did shoot." And, on the basis of that finding, properly scored OV 1 at 25 points. See MCL 777.31(1)(a). The trial court also found beyond a reasonable doubt that Dickerson "committed this assault with intent to commit great bodily harm less than the crime of murder with a handgun while ineligible to do so." This finding supported a score of five points under OV 2. MCL 777.32(1)(d).

The trial court did not, however, properly score OV 3 in accordance with *Lockridge*. The trial court assessed 10 points under OV 3 for "[b]odily injury requiring medical treatment [that] occurred to a victim." MCL 777.33(1)(d). The trial court never explicitly found beyond a reasonable doubt that anyone was injured in the case. The record and testimony make clear that Cierra Taylor and Barnett were shot and seriously wounded. And the trial court stated that it found "Cierra Taylor was in fact shot in the back of her neck . . . [and] [that] Delvon Barnett was shot in the . . . groin area." But it did not explicitly state whether it was finding this fact beyond a reasonable doubt.

Likewise, the trial court did not score OV 9 using facts found beyond a reasonable doubt or admitted by Dickerson. The trial court assessed 10 points under OV 9 for the fact that "2 to 9 victims . . . were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). Although the trial court found beyond a reasonable doubt that Dickerson and his unknown compatriots were "firing at this group," the trial court did not discuss whether the "group" was actually placed in danger of physical injury or death. Also, it did not explicitly state that it found beyond a reasonable doubt that Cierra Taylor and Barnett were both injured or were placed in danger of physical injury or death.

When the points scored on the basis of facts not found beyond a reasonable doubt are subtracted from the tally, the new score changes Dickerson's minimum sentence range. Therefore, we remand this case to the trial court for a determination of whether it would have sentenced Dickerson differently had it not been constrained by the mandatory nature of the sentencing guidelines. See *Lockridge*, 498 Mich at 398.

We affirm Dickerson's convictions, but remand to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh

-4-