# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES ROBERT COWDREY,

      Defendant-Appellant.

UNPUBLISHED
December 21, 2017

No. 333859
Gratiot Circuit Court
LC No. 16-007414-FH

Before: MURPHY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, James Cowdrey, appeals as of right from his jury trial convictions of operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), second offense, MCL 333.7413(2), and possession of methamphetamine, MCL 333.7403(2)(b)(*i*), second offense, MCL 333.7413(2). Cowdrey was sentenced to serve concurrent prison terms of 8 to 40 years for the operation or maintenance of a methamphetamine conviction and 18 months to 20 years for the possession of methamphetamine conviction. Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

On January 18, 2016, Drew Criner purchased Coleman camping fuel in order to manufacture methamphetamine with Cowdrey. Criner, however, purchased the wrong kind of fuel, so he and Cowdrey returned it and then headed toward a different store to purchase the correct kind. Unbeknownst to them, they were being observed by the police, who suspected that they were involved in manufacturing methamphetamine. The police pulled them over, and arrested Criner for driving without a valid driver's license. Criner gave them consent to search his truck, and the police discovered what they believed to be methamphetamine in a green tube in the center console, as well as two trash bags containing suspected components used to make methamphetamine. Inside the trash bags, the police discovered several pieces of mail addressed to Cowdrey, coffee filters with white residue, a gas generator[1] and "charred pieces of aluminum

---

[1] The record reflects that a gas generator is typically a 20 ounce bottle that is used when manufacturing methamphetamine.

foil," which an officer testified were "aluminum canoes" typically used for smoking methamphetamine. Additionally, the police found 59 empty blister packs, which they suspected had contained pseudoephedrine.

The police obtained a search warrant for Cowdrey's home, where they discovered several items used for manufacturing methamphetamine. In the kitchen, they located lye, fertilizer, coffee filters without a coffee maker, and Coleman camping fuel. In the living room, they discovered lithium batteries, which were another essential component. In Cowdrey's bedroom, they discovered a resealable plastic bag containing 20 pseudoephedrine tablets, as well as a paper bindle containing methamphetamine.

Cowdrey waived his *Miranda* rights and gave a statement to the police. According to the interviewing officer, Cowdrey stated "that he cooked about twice a month inside of a corn crib on his property or in his kitchen, while it was being ventilated." The officer also testified that Cowdrey told him that the trash bags found in the bed of Criner's truck came from Cowdrey's residence. Finally, the officer testified that Cowdrey stated that he used Coleman camping fuel and fertilizer to manufacture methamphetamine.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Cowdrey argues that he was denied the effective assistance of a lawyer because his trial lawyer called the individual who performed a limited methamphetamine assessment on Cowdrey's house instead of the lab technician that analyzed the results of the assessment. Cowdrey preserved this issue by moving in this Court for a remand for a *Ginther*[2] hearing, which we granted.[3] Following the hearing, the trial court denied Cowdrey's motion for new trial based on ineffective assistance. The court found that Cowdrey had failed to establish that his lawyer's performance was deficient and that, even if he had, he had not established outcome determinative error. Claims that a trial lawyer provided ineffective assistance present a mixed question of law and fact. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). We review for clear error the court's findings of fact, and we review de novo the constitutional issues arising from the ineffective assistance claim. *Id*.

### B. ANALYSIS

In order to establish error warranting relief, Cowdrey must show that his lawyer's decision fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the unprofessional error, the outcome of his trial would have been different. *People v Gioglio (On Remand)*, 296 Mich App 12, 21-22; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. Cowdrey asserts that his lawyer's

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Cowdrey*, unpublished order of the Michigan Court of Appeals, entered December 21, 2016 (Docket No. 333895).

performance was deficient because she subpoenaed the individual who performed the assessment at Cowdrey's house rather than the lab technician that analyzed the samples that were collected. Because the lab technician did not testify at trial, the lab results were inadmissible. See generally *People v McDaniel*, 469 Mich 409, 410-414; 670 NW2d 659 (2003) (indicating that in order to admit a laboratory report as evidence, the person who performs the analysis must testify). Cowdrey contends that if the laboratory report had been admitted, it would have shown that an undetectable amount of methamphetamine was found in the kitchen. On this record, it appears that there was no strategic reason for calling the assessor rather than the laboratory technician.

However, Cowdrey cannot establish the second prong of ineffective assistance because he cannot show that the error was outcome determinative. *Gioglio*, 296 Mich App at 22. The police located trash bags containing components necessary for methamphetamine production, including a gas generator, empty pseudoephedrine blister packs, and coffee filters with white residue. Cowdrey told the police that the bags came from his house, and there was mail addressed to him inside the bags. Additionally, inside Cowdrey's home the police found components essential for manufacturing methamphetamine, including lye, fertilizer, lithium batteries and Coleman fuel. Finally, Cowdrey confessed that he had cooked methamphetamine in his kitchen as well as in the corn crib. Cowdrey's admission that he cooked methamphetamine in the corn crib tends to lessen the impact of the laboratory report, because samples were taken from the house, not the corn crib. Further, Cowdrey stated that he ventilated the kitchen when he cooked methamphetamine, and there was testimony at trial that such ventilation could have had an effect on the amount of methamphetamine found in the sample. In sum, the jury was presented with a wealth of evidence showing that Cowdrey manufactured methamphetamine. On this record, Cowdrey has not established that there was a reasonable probability that the outcome of his trial would have been different but for his lawyer's unprofessional error. See *id*.

Affirmed.

/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle