*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 29, 2021

v

SONNY JOE BROSKEY,

Defendant-Appellant.

No. 351247
Clinton Circuit Court
LC No. 2018-010106-FC

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of four counts of first-degree criminal sexual conduct (person under 13), MCL 750.520b(1)(a), and one count of second-degree criminal sexual conduct (person under 13), MCL 750.520c(1)(a). He was sentenced as a fourth-offense habitual offender to concurrent sentences of 50 to 90 years in prison on each count. He appeals as of right, arguing that his trial counsel was ineffective. We affirm.

## I. BACKGROUND

At trial, defendant's stepdaughter, DB, testified that defendant repeatedly sexually abused her. At various times, defendant showed DB pornography, touched her vagina, inserted his tongue, fingers, and penis into her vagina, and told DB to touch her vagina. He sometimes would blindfold her and ask her to guess what flavor sucker he was putting into her mouth. On at least one occasion, DB saw that the "sucker" was actually his penis. DB also testified that defendant once told her mother he was taking DB out for ice cream but instead drove her to an isolated location and forced his penis into her vagina while in the back of their car. Afterwards, she told him she would never do anything for him ever again, and this was the last sexual act he did to her before he went to prison. These actions took place in 2011, when DB was eight years old. DB said she did not immediately tell anyone because defendant had threatened to kill her family and she believed that he meant it. Eventually, DB reported defendant's earlier actions on a questionnaire at school which prompted law enforcement to begin investigating the case.

DB's two half-sisters, also stepdaughters of defendant, testified under MCL 768.27a about other sexual acts allegedly committed by defendant some years before the events related by DB.

-1-

The half-sisters recounted defendant blindfolding them when they were eight years old or younger and asking them to guess the flavor of suckers. One of the half-sisters testified that, at least once, the sucker was defendant's penis. The other half-sister testified that the sucker filled up her whole mouth and tasted like snot. There was a police investigation, but no charges were filed with regard to the acts against the half-sisters. Defendant testified and denied DB and her half-sisters' allegations of sexual misconduct, but stated that he had blindfolded DB's half-sisters and asked them to guess the flavor of suckers as a "bonding activity."

Defendant argues that he received ineffective assistance of counsel for various reasons. To prevail on a claim of ineffective assistance of counsel, "a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). Defendant was required to establish "the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Establishing this evidentiary basis for the claim must be done in the trial court by a motion for new trial or a *Ginther*[1] hearing. See *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994). Defendant did not move for a new trial or request a *Ginther* hearing. As such, this Court's review is limited to the appellate record. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

## II. STANDARD OF REVIEW

An ineffective assistance of counsel claim generally involves "a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation omitted). Any factual findings by the trial court are reviewed for clear error, while this Court determines de novo whether "counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012).

## III. ANALYSIS

### A. FAILURE TO INVESTIGATE

Defendant first argues that trial counsel failed to investigate the history of sexual abuse accusations made in DB's household. Failure to investigate can constitute ineffective assistance of counsel. See *People v Trakhtenberg*, 493 Mich 38, 52-55; 826 NW2d 136 (2012). However, there is nothing in the record to indicate what new information such an investigation would have found. Moreover, there is no evidence in the record to show that trial counsel in fact failed to investigate other sexual abuse allegations or whether trial counsel did investigate but found nothing he considered helpful. See *Anderson*, 322 Mich App at 630 ("On the record before the Court, it is just as likely that defense counsel did investigate these potential witnesses but found that their testimony would not be useful."). Assuming evidence of other sexual abuse accusations in the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

household exists, defense counsel could have reasonably thought that such evidence would have increased sympathy for DB and her siblings or made the jury more likely to believe that sexual abuse was commonplace in the house and thus that defendant was guilty. See *Gioglio*, 296 Mich App at 22-23 (discussing the need to entertain possible reasons for defense counsel's conduct). Trial counsel was, in fact, aware of the prior accusations made by DB's half-sisters, as shown by the fact that counsel actually did cross-examine them on the basis of the prior statements. Defendant has not shown that trial counsel's performance was deficient because of a failure to investigate other sexual abuse allegations.

Defendant also makes an offhand reference to trial counsel's failure to seek out the "many witnesses that could have testified that the complaining witness had motive, and opportunity to set the defendant up." Defendant offers nothing to meet his burden of establishing a factual predicate for this claim. See *Hoag*, 460 Mich at 6. Furthermore, although the victim's testimony alone is sufficient for a conviction, MCL 750.520h, DB's half-sisters also testified at trial to experiencing similar treatment by the defendant (see MCL 768.27a. "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant"). Trial counsel could have reasonably concluded that, under the circumstances, trying to establish something akin to a conspiracy among the half-sisters could be counterproductive and taken by the jury as implausible.

### B. FAILURE TO CALL WITNESSES

Defendant also points to trial counsel's failure to call Children's Protective Services witnesses or others to testify about these other sexual abuse allegations. The failure to call witnesses is reviewed under the same standard as any other ineffective assistance of counsel claim. *People v Jurewicz*, 506 Mich 914, 914; 948 NW2d 448 (2020). Again, defendant has not established any evidentiary basis to show who these witnesses would have been or of what their testimonies would have consisted. See *Hoag*, 460 Mich at 6. To simply assert that these witnesses' testimonies would have benefited the Defendant—without providing any concrete explanation as to why or how they would have provided an advantage—does not meet the burden established in *Hoag*. As such, defendant has not shown that trial counsel's performance was deficient for failing to call the witnesses.

There is slightly more information in the record about a potential witness regarding the earlier investigation into DB's half-sisters' allegations, which did not result in criminal charges against defendant. Trial counsel stated on the record that he had police reports showing that the sisters' allegations were definitely unfounded, and that he was hoping to hear back from a detective who could testify about that investigation. However, trial counsel then said that such a witness might not be necessary if the prosecution would stipulate that defendant was never charged for those allegations. The prosecution agreed to do so. There is nothing in the record to show whether the unnamed potential witness did call trial counsel back, nor is there anything to show what the unnamed potential witness would have said if called to testify about the investigation into the sisters' allegations. Defendant's argument that trial counsel's performance was deficient for failing to call this witness thus lacks evidentiary support.

Defendant also claims that trial counsel should have called Thomas Crystal, who, along with his partner Chelsea and children, lived with defendant and DB's family for some weeks during the relevant time period. Again, the record does not show whether trial counsel did speak to Crystal, the probable content of his testimony if he had been called to testify, or that Crystal even had any relevant testimony to give. DB testified that the "other two people" who lived upstairs (i.e., the Crystals) were not around when any of the sexual acts occurred; furthermore, although she admitted it was possible they were somewhere in the house, "they usually stayed to their self [sic]." A detective who did speak to Crystal briefly said only that he mentioned nothing relevant. There is nothing to show if Crystal remembered his time with the family at all. Defendant has not created a record from which this Court can determine that failing to call Crystal constituted deficient performance by counsel. We will not find counsel ineffective on the basis of speculation.

## C. FAILURE TO CONSULT AN EXPERT

Finally, defendant argues that trial counsel should have found an expert to testify about the dynamics of a chaotic household "under siege from false allegations," and the results of "being raised in such an environment, without opining as to the credibility of the accusations at issue." It seems clear that the aim in consulting such an expert would be to undermine the credibility of DB and her half-sisters.

Defendant points to *People v Ackley*, 497 Mich 381, 389-392; 870 NW2d 858 (2015), for the proposition that failure to consult an expert can constitute ineffective assistance of counsel. *Ackley*, however, differs from this case in important ways. First, in *Ackley*, expert testimony about a victim's injuries was the gravamen of the prosecution's case, and would "require a response." *Id.* at 389. In contrast, no expert testified for the prosecution in this case. Secondly, in *Ackley*, the defendant developed a record showing both that an expert in the relevant field agreed with the defense theory of the case, and that the defense counsel had failed to follow up when given the name of a specific qualified expert who might be willing to testify. *Id.* at 385-387. Here, defendant has not provided us with any proposed expert testimony, so the value of any such expert testimony is at best speculative. Moreover, there is nothing in the record to show whether trial counsel considered locating an expert or attempted to do so.

Affirmed.

/s/ Kathleen Jansen
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola