*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LYND BARRON,

        Defendant-Appellant.

UNPUBLISHED
July 2, 2019

No. 339508
Calhoun Circuit Court
LC No. 2016-002657-FC

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant, Christopher Lynd Barron, appeals by right his jury convictions of armed robbery, MCL 750.529, and first-degree home invasion, MCL 750.110a(2). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 50 to 100 years in prison for his conviction of armed robbery and 25 to 60 years in prison for his conviction of first-degree home invasion. For the reasons explained below, we affirm.

## I. BASIC FACTS

James and Karen Peterson testified that an unknown man forced his way into their home while armed with what appeared to be a gun, forced James to lay down, repeatedly struck James, and stole James's wallet and a bank envelope with cash. James and Karen both testified that the man was white, had a height of about 5'9" or 5'10", and had a slender build. They testified that he wore a two-toned sweatshirt with a hood and that he had on a white or gray ski mask under his hood. In the Petersons' neighbor's driveway, police officers recovered an improvised mask that had been made from the sleeve of thermal underwear. DNA taken from the improvised mask matched defendant's DNA.

## II. VALIDITY OF ARREST WARRANT

Defendant first argues that his convictions must be vacated because his arrest warrant was invalid. As defendant concedes on appeal, he did not preserve this claim of error for appellate review. Therefore, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

-1-

In support of his claim, defendant relies on a document in which an officer provided factually false information to support his request for an arrest warrant. In response to the initial warrant request, the prosecutor asked for more information, including "how [do] we know the white sweatshirt was worn by the suspect[?]" The officer responded with a supplemental narrative, in which he stated that the white sweatshirt is the "makeshift mask described as a 'thermal sleeve' " and was found in a driveway next to where the incident occurred, was in the same direction that the suspect fled afterward, and the item was found to contain defendant's DNA. The officer also volunteered that elsewhere, the police had found two jackets in a nearby trash container, which matched the description of what the suspect had been wearing. One was a two-toned jacket, which contained blood of the victim, James, and the other had a cigarette butt inside the pocket. The narrative noted that the cigarette butt contained DNA that matched that of defendant. This last statement is the one that defendant takes issue with, and he is correct in that the statement was factually incorrect; the DNA testing on the cigarette butt showed that there were two donors, and the Michigan State Police expert concluded that defendant could not have been one of the donors.

Although the prosecutor may have relied on this statement in deciding to authorize the warrant request, it is not clear that the magistrate who issued the warrant ever saw or relied on that statement. Indeed, the magistrate may have relied solely on the allegations in the complaint. See MCL 764.1a(2) (describing the bases for finding probable cause to issue a warrant for arrest). Additionally, even assuming that the request for an arrest warrant contained a false statement, that fact alone would not warrant relief. As this Court has explained in the context of a search warrant, a false statement in a warrant application will invalidate the warrant only if the false statement was necessary to a finding of probable cause. See *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992). In the supplement, the officer correctly noted that defendant's DNA was found on the mask discovered along the path taken by the robbery suspect during his flight from the Petersons' home. That evidence, by itself, was sufficient to connect defendant to the robbery and home invasion. As such, because defendant cannot show that but for the factually incorrect statement, there would not have been probable cause to issue the arrest warrant, his claim necessarily fails.[1]

---

[1] In any event, even if the arrest warrant were invalid, defendant would not be entitled to relief. A trial court does not lose jurisdiction of an accused as a result of an invalid arrest warrant. *People v Burrill*, 391 Mich 124, 133; 214 NW2d 823 (1974); see also *Gerstein v Pugh*, 420 US 103, 119; 95 S Ct 854; 43 L Ed 2d 54 (1975) ("Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction."). The *Burrill* Court explained that "a court's jurisdiction to try an accused person cannot be challenged on the ground that physical custody of the accused was obtained in an unlawful manner." *Burrill*, 391 Mich at 133. " '[T]he power of a court to try a person for crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a "forcible abduction".' " *Id.*, quoting *Frisbie v Collins*, 342 US 519, 522; 72 S Ct 509; 96 L Ed 541 (1952). Rather, due process is satisfied when the accused has been convicted after having been fairly apprised of the charges against him or her and after having had a fair trial in accord with constitutional safeguards. *Id.*

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor committed misconduct by stating in her closing argument that the only DNA found on the improvised mask belonged to defendant, when in fact there was also DNA from an unknown donor. Defendant argues that he properly preserved his claim of prosecutorial misconduct by raising it in his motion for a new trial. However, a defendant cannot preserve a claim of prosecutorial misconduct premised on a prosecutor's comments in a motion for a new trial; he must offer a contemporaneous objection. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). Therefore, this issue is unpreserved.

The test for claims of prosecutorial misconduct is to determine whether the misconduct deprived the defendant of a fair and impartial trial. *Id.* at 272. However, we review unpreserved issues for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763. Thus, in this context, reversal only is warranted if a curative instruction would have been inadequate to cure any prejudice. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003); see also *People v Taylor*, 275 Mich App 177, 185; 737 NW2d 790 (2007).

In this case, the prosecutor arguably mischaracterized the evidence when she stated in closing that the "only" DNA found on the mask came from defendant. An expert testified at trial that she found DNA from two donors on the mask. She stated that there was one major donor and one minor donor. The minor donor's sample contained insufficient DNA to create a profile. She testified that she determined that defendant's DNA profile matched the major donor's profile. Thus, while there was only one *identifiable* DNA source on the mask, defendant's, there technically were two DNA donors.

Even though the prosecutor may have made a misstatement, it does not appear that the prosecutor deliberately mischaracterized the evidence. She also did not emphasize or repeat her error throughout her arguments. Indeed, after defense counsel emphasized during closing argument that the expert testified that there was DNA from *two* donors on the mask, the prosecutor in rebuttal acknowledged that there was a minor donor. She further invited the jury to review the expert's report and decide for themselves why defendant's DNA was on the thermal sleeve.

The jury had the expert's testimony, the expert's report, the defense's closing statement, and the prosecutor's rebuttal before it. Given these circumstances, the jury clearly was aware that the prosecutor's earlier comment was mistaken. For that reason, the erroneous statement had little if any prejudicial effect. The trial court also instructed the jury that the lawyers' statements and arguments were not evidence and that the jury "should only accept things that the lawyers say that are supported by the evidence." The jury presumably followed that instruction.

---

As discussed in this opinion, defendant has not established any irregularities that would warrant a new trial. Because the jury convicted defendant after a full and fair trial, defendant cannot now challenge the validity of his conviction on the basis of a purportedly illegal arrest. See *id.*

See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Additionally, had defense counsel objected to the statement, the trial court could have fashioned an instruction that would have cured the error. Consequently, defendant has not shown that the prosecutor engaged in plain misconduct that prejudiced his trial.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his defense counsel provided ineffective assistance by failing to properly investigate his potential defenses and by giving him improper advice concerning whether to testify on his own behalf. Whether defendant had the effective assistance of counsel involves a mixed question of fact and law. *People v Gioglio (On Remand)*, 296 Mich App 12, 19; 815 NW2d 589 (2012), remanded on other grounds 493 Mich 864 (2012). This Court reviews de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced defendant's trial but reviews the trial court's factual findings for clear error. *Id.* at 19-20. "The clear-error standard is highly deferential; an appellate court will only determine that a trial court's finding is clearly erroneous when, after a review of the entire record, it is left with the definite and firm conviction that the trial court has made a mistake." *Id.* at 20.

"To establish a claim of ineffective assistance of counsel, the defendant must show that 'counsel's representation fell below an objective standard of reasonableness' under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id*. at 22, quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 St Ct 2052; 80 L Ed 2d 674 (1984). Under the first prong, the defendant must identify those acts or omissions that he or she contends were not the result of reasonable professional judgment. See *Gioglio*, 296 Mich App at 22. The reviewing court must then determine whether the identified acts or omissions were outside the wide range of professionally competent assistance under the totality of the circumstances. *Id*.

On appeal, defendant maintains that defense counsel was constitutionally insufficient in several ways: (1) she failed to contact his girlfriend, Esthony Cochran, whom he states could have provided him with an alibi defense and who could have testified about his lack of motive; (2) she failed to investigate "Zach," who purportedly admitted that he was the perpetrator of the crimes at issue; and (3) she prevented defendant from testifying on his own behalf by falsely informing him that the prosecution would present new evidence beyond impeachment if he testified. The trial court resolved all these claims by making factual findings contrary to defendant's versions of events after taking testimony at a *Ginther*[2] hearing.

At the hearing, defense counsel testified that defendant never told her that Cochran could provide an alibi. She also stated that she spoke with Cochran—contrary to defendant's claim—and Cochran told her that she did not recall defendant's whereabouts on the night at issue. Cochran's testimony—that she now recalled that defendant was with her on that night—was not

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

persuasive given her clear credibility issues, and the trial court resolved the disputed testimony against Cochran. The court found his defense counsel credible and found that she had no knowledge that Cochran could have or would have testified as an alibi witness. The court further found that Cochran was not available to testify about defendant's finances because she had made herself unavailable to testify when she disappeared for several months. The trial court's findings were supported by the record, and we are not left with the definite and firm conviction that it erred. Given these facts, we agree that defense counsel's investigation into Cochran was reasonable, and she cannot be faulted for failing to call Cochran at trial.

The trial court also found that defense counsel had no knowledge about the "random" person named Zach. Indeed, the trial court specifically found defendant and his claim that he provided information about "Zach" not credible. In the absence of such evidence, showing that counsel was aware of Zach's purported involvement with the crime, defense counsel's failure to further investigate Zach cannot be said to be unreasonable.

Finally, the trial court did not clearly err when it found, contrary to defendant's claims, that defense counsel did not inform defendant that he should not testify because the prosecutor would use new evidence at trial. Whether defense counsel proffered such advice involved a clear credibility contest. The trial court found defense counsel credible and stated that defendant was dishonest with the court. The trial court was in the best position to observe the witnesses' demeanor, see MCR 2.613(C), and this Court will defer to the trial court's resolution of credibility disputes, see *Gioglio*, 296 Mich App at 24. Accordingly, the trial court did not clearly err when it found that defense counsel did not in fact provide the improper advice.

Therefore, we hold that the trial court did not clearly err in making its related factual findings, and we also hold that based on these facts, his defense counsel did not provide ineffective assistance.

## V. PRELIMINARY EXAMINATION

Defendant next argues that the district court erred when it denied his motion to adjourn the preliminary examination. We need not address the merits of this unpreserved claim of error. A preliminary examination is not a constitutionally required procedure, and any errors involving the preliminary examination are harmless if the defendant was subsequently convicted at an otherwise fair trial. *People v Johnson*, 315 Mich App 163, 200 n 7; 889 NW2d 513 (2016); see also *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010) ("[T]he presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless."). Here, defendant has not identified any errors at his jury trial that rendered it unfair. Consequently, assuming any errors existed at the preliminary examination, they were harmless.

## VI. ADMISSION OF THE MASK

In his Standard 4 brief on appeal, defendant argues that the district court erred when it admitted the improvised mask at the preliminary examination and that the circuit court erred when it admitted the mask at trial. This Court reviews a trial court's decision whether to admit evidence for an abuse of discretion. *People v Roper*, 286 Mich App 77, 90; 777 NW2d 483 (2009). A trial court abuses its discretion when it selects an outcome that falls outside the range

of reasonable and principled outcomes. *People v Daniels*, 311 Mich App 257, 264-265; 874 NW2d 732 (2015). This Court reviews de novo the proper interpretation and application of the rules of evidence. *Roper*, 286 Mich App at 91. However, because these claims of error are unpreserved, this Court's review is limited to determining whether defendant established a plain, outcome-determinative error. See *Carines*, 460 Mich at 763.

On appeal, defendant maintains that the trial court should not have allowed the admission of the evidence concerning the thermal sleeve because the prosecution failed to present any evidence that the sleeve had any connection to the crime at issue. Under MRE 901(a), the proponent of evidence bears the burden of bringing forth evidence sufficient to support a finding that the matter in question is what the proponent claims it to be. The proponent can authenticate evidence through direct or circumstantial evidence, and the proponent's evidence does not need to be free of all doubt. See *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 155; 908 NW2d 319 (2017). The proponent need only "make a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be." *Id.*

In this case, the victims, James and Karen, testified that the person who robbed them wore a white or gray ski mask, and James indicated that it was made of thin material. The prosecution also presented a 911 call in which Karen told the dispatcher that the man had a white mask on. Karen further testified that the perpetrator ran around the front of their house and fled on foot. An officer testified that he found a thermal "sleeve," which appeared to have had two eye holes cut into it, in the Petersons' neighbor's driveway shortly after the robbery. The neighbor's driveway was along the path used by the perpetrator of the robbery. The officer opined that the improvised mask had not been in the driveway for very long given that it was not wet. The jury also saw photos of the improvised ski mask that showed its condition and suggested that it must not have been exposed to the elements for very long. The evidence suggested that the mask was discarded by the perpetrator of the robbery as he fled the Petersons' home, which was sufficient to authenticate it. *Id.*

Defendant places a lot of weight on the fact that James and Karen could not identify the mask as the one worn by the perpetrator when an officer showed them photos at a later date. However, they testified that the perpetrator was wearing it under a hoodie, and Karen said that the perpetrator had the hoodie zipped all the way up. Thus, their testimony suggested that they were unable to see the thermal sleeve's ends. Nevertheless, their testimony was consistent with the physical characteristics of the thermal sleeve itself—it was in fact white and was made of a thin material. In any event, the prosecution did not have to establish beyond all doubt that the improvised mask was worn by the perpetrator. The prosecution only had to establish that a reasonable juror could conclude that it was the mask worn by the perpetrator; taken as a whole, the evidence permitted such a finding. See *id.* Once the prosecution established a prima facie showing, any doubts about the authenticity of the thermal sleeve as the mask worn by the perpetrator were for the jury. *Id.* at 156.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The fact that an improvised white mask was found in the Petersons' neighbor's driveway made it more likely than not that the Petersons' accurately described the perpetrator's attire and the path of his flight. It was, therefore, at a minimum

-6-

relevant to bolster the credibility of James and Karen. See *People v Layher*, 464 Mich 756, 763-764; 631 NW2d 281 (2001). Additionally, when combined with the evidence that defendant's DNA was found on the mask, the mask was relevant to establish defendant's identity as the perpetrator of the home invasion and robbery at issue. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Relevant evidence is generally admissible. MRE 402; *Roper*, 286 Mich App at 91. Because the prosecution sufficiently authenticated the mask, see MRE 901(a), and the mask was relevant and otherwise admissible, see MRE 401; MRE 402, the trial court (and district court) did not plainly err by admitting the mask into evidence.

## VII. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues in his Standard 4 brief that the trial court erred when it denied his motion for a directed verdict. Although he agrees that someone committed an armed robbery and home invasion at the Petersons' home, he maintains that the prosecution did not present sufficient evidence to identify him as the perpetrator of the crimes at issue.

This Court reviews de novo whether a defendant established grounds for a directed verdict. See *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). "In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Roper*, 286 Mich App at 83. When making this evaluation, any conflicts in the evidence are to be resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The same standard applies to a motion for directed verdict except that this Court considers only the evidence presented up to the time of the motion. See *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

Again, defendant only challenges whether the evidence was sufficient to prove the element of identity, which is an element of every offense. *Yost*, 278 Mich App at 356. As such, the prosecutor had to present evidence sufficient to permit the jury to find beyond a reasonable doubt that defendant was the perpetrator of the offenses at issue.

At trial, the prosecution presented evidence concerning the general appearance of the perpetrator of the armed robbery and home invasion. James and Karen both testified that the perpetrator was white, that he was about 5'9" or 5'10" tall, and that he had a slender build. They also testified that he wore a two-toned sweatshirt with a hood and a white or gray ski mask. James indicated that the perpetrator's mask was of a thin material. Shortly after the robbery, an officer found a mask that had been improvised from white thermal underwear. He found it in the driveway next to the Petersons' home. The officer testified that the mask was not wet and agreed that it must not have been there very long.

The prosecutor also presented video evidence that showed the suspected perpetrator of the robbery about a block from the Petersons' home just minutes after the robbery. The video evidence showed that the perpetrator was Caucasian, was not wearing a ski mask at that point, and had on a two-tone sweatshirt with a hood. The video evidence was consistent with the Petersons' testimony that the perpetrator was of average height, had a slender build, and wore a two-toned hooded sweatshirt. Officers additionally found—among other things—the sweatshirt,

James's wallet, and the BB gun used in the crime, in the vicinity of an auto parts store that was along the path the suspect took. The evidence suggested that the perpetrator of the armed robbery and home invasion fled from the Petersons' home in the direction of the auto parts store and that he discarded evidence along that path. A reasonable jury could infer that the mask was one of those items, which explains why it was found in the neighboring driveway along the perpetrator's path of flight shortly after the robbery and home invasion.

Importantly, the prosecution further presented evidence that DNA from two donors was found on the mask. The evidence showed that defendant was the major donor.[3] The presence of DNA from a second donor did not preclude the permissible inference that defendant was the major donor because he wore the mask. The prosecutor did not have to negate every reasonable theory consistent with defendant's innocence. See *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002). Viewing the evidence in the light most favorable to the prosecution, as this Court must do, *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992), the jury could reasonably conclude that the reason defendant's DNA was found on the mask was because he wore the mask over his face and that he did so during the commission of the offenses at issue. Therefore, the prosecutor presented sufficient evidence to establish defendant's identity as the perpetrator of the armed robbery and home invasion.

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan

---

[3] "Major donor" simply means that there was more DNA material belonging to that donor that was found compared to the amount from the other, or "minor" donor. "Major" and "minor" donor, in and of themselves, carry no connotation about guilt or innocence.