*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 21, 2023

Plaintiff-Appellee,

v

No. 362223
Jackson Circuit Court
LC No. 21-000832-FC

MACKENZIE LYNN QUARRELS,

Defendant-Appellant.

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Mackenzie Quarrels, appeals as of right her convictions and sentences for second-degree murder, MCL 750.317; carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and carrying a concealed weapon, MCL 750.227. The trial court sentenced Quarrels to 450 months to 60 years' imprisonment for second-degree murder, 2 years' imprisonment with 444 days' credit for felony-firearm, and 2 to 5 years' imprisonment with 444 days' credit for carrying a concealed weapon. For the reasons stated in this opinion, we affirm her convictions, but remand for resentencing.

## I. BASIC FACTS

Quarrels's convictions arise from the death of KraShawna Walker, who was shot dead following a verbal altercation with Quarrels. On the day of the shooting, Quarrels drove to a house with Dhasa Sims to pick up some money. When Quarrels arrived, Walker was sitting in her car which was parked on the road near the driveway. The driveway and the surrounding street were filled with cars. After picking up the money, Quarrels attempted to pull her car out of the driveway. She asked Walker to move her car. Walker told Quarrels that "she wasn't moving shit." After additional attempts to back up the car, Quarrels asked Walker to move her car again. Walker responded, "I'm not moving shit. I'll beat your ass . . . ." Walker got out of her car and approached Quarrels's car. When she attempted to open the passenger-side door, Quarrels shot her.

Quarrels drove over the front yard and left the scene of the shooting. Sims testified that Quarrels drove around in circles, crying, and calling people from Sims's phone. She stated that she did not remember what Quarrels did with the gun, but she recalled telling a police officer that

Quarrels had tossed it out the window of the car. Quarrels eventually took Sims home. Sims went to a casino so that she could be seen on camera, and she was pulled over by police officers after leaving the casino. She lied to the officers about her involvement in the shooting. Several days later, Quarrels was arrested at an apartment in which police officers found an empty gun case.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Quarrels argues that her defense lawyer provided ineffective assistance by pursuing a reasonable-doubt-defense rather than arguing that Quarrels had acted in self-defense and by failing to request a self-defense jury instruction. When no evidentiary hearing has been held, our review of a claim of ineffective assistance is limited to mistakes apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012).

### B. ANALYSIS

To prevail on a claim of ineffective assistance, a defendant must demonstrate that (1) her lawyer's representation fell below "an objective standard of reasonableness under prevailing professional norms," and (2) there is a reasonable probability that, but for her lawyer's unprofessional errors, the result of the trial would have been different. *Id*. (quotation marks and citation omitted). In doing so, the defendant must overcome the strong presumption that her lawyer's assistance was effective. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). We will not substitute our own judgment for that of the defendant's lawyer or use the benefit of hindsight in assessing the defense lawyer's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Quarrels asserts that her lawyer should have pursued a self-defense theory over a reasonable-doubt strategy at trial. We disagree. Under Michigan law,

> the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force. The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat. [*People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002).]

The duty to retreat does not apply to a person responding to "a sudden, fierce, and violent attack," or "an attacker who he reasonably believes is about to use a deadly weapon." *Id*. at 119. See also MCL 780.972 (codifying self-defense).

In this case, the evidence does not support a self-defense theory. The argument started because Quarrels struggled to back her car out of a driveway. She asked Walker to move her car; Walker refused. She tried to back up again and failed. She asked Walker a second time and Walker again refused. Walker made a verbal threat, got out of her car, and walked toward Quarrels's vehicle. She was shot dead when she tried to open the passenger-side door. Walker was unarmed and there are no allegations that anyone thought she was armed. Nothing about this situation suggested that Walker placed Quarrels in fear of imminent danger of death or great bodily harm. See *Riddle*, 467 Mich at 119. Further, Walker could not fairly be described to have suddenly, fiercely, and violently attacked Quarrels. See *id*. She only threatened to "beat" Quarrels. Additionally, the record reflects that Quarrels could have retreated by driving the vehicle away from the scene. On the whole, Quarrels's actions were not consistent with an individual who feared for own life and acted to defend herself. Therefore, self-defense was not a credible defense strategy.

Rather than rely upon a strategy contradicted by the record, it appears that Quarrels's lawyer instead relied upon a defense that Sims, not Quarrels, had been the shooter. This theory was supported by the record given that Sims was the only witness who testified that Quarrels was the shooter; other witnesses only noted that shots came from the vehicle. Further, Quarrels's lawyer focused his arguments on Sims's "suspicious" behavior after the shooting. For instance, Sims's phone was used to make calls after the shooting. After Quarrels and Sims got back to her house, Sims cleaned herself up and went to a casino so that she could be seen on camera. Thereafter, Sims lied to the police officers investigating the shooting when she was pulled over leaving the casino. Given the record in this case, the defense strategy to argue that Sims was the shooter was not unreasonable, nor was the defense decision to not pursue a self-defense theory.

We conclude that Quarrels's lawyer also did not perform deficiently for failing to request a self-defense jury instruction. Criminal defendants have "the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). Because the record did not support inclusion of a self-defense instruction, Quarrels was not entitled to a self-defense jury instruction and her lawyer was not ineffective for failing to request it.

III. SENTENCE

A. STANDARD OF REVIEW

Quarrels asserts that the trial court erred in scoring prior record variable (PRV) 7, offense variable (OV) 6, and OV 12. Under the sentencing guidelines, we review for clear error the trial court's factual determinations. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted).

B. ANALYSIS

Quarrels first argues that the trial court erred by assessing 20 points for PRV 7, when it should have assessed 10 points for this variable. PRV 7 accounts for "subsequent or concurrent felony convictions." MCL 777.57. A trial court assesses 20 points for PRV 7 when "[t]he offender has 2 or more subsequent or concurrent convictions . . . ." MCL 777.57(1)(a). A trial court assesses 10 points when "[t]he offender has 1 subsequent or concurrent conviction . . . ." MCL 777.57(1)(b). The trial court may "not score a felony[-]firearm conviction in this variable." MCL 777.57(2)(b). Here, Quarrels only had two concurrent or subsequent convictions to her conviction of second-degree murder: felony-firearm and carrying a concealed weapon. Thus, she only had one concurrent felony conviction that could be considered for purposes of PRV 7 because a conviction of felony-firearm cannot be considered for this variable. See MCL 777.57(2)(b). Therefore, the trial court erred when it assessed 20 points for this variable instead of 10 points.

Quarrels next argues that the trial court erred by assessing 25 points for OV 6 instead of 10 points. OV 6 accounts for the "offender's intent to kill or injure another individual." MCL 777.36. A trial court assesses 25 points for OV 6 when "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). A trial court must assess 10 points for OV 6 when "[t]he offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life . . . ." MCL 777.36(1)(c). The following considerations are applicable to scoring OV 6:

> (a) The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury.

> (b) Score 10 points if a killing is intentional within the definition of second[-]degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent. [MCL 777.36(2)(a)-(b).]

Quarrels argues on appeal that she committed the killing "in an extreme emotional state caused by an adequate provocation," so she should have been scored 10 points, not 25. The trial court, however, found that Quarrels "had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result . . . ." MCL 777.36(1)(b). That finding was not clearly erroneous. Walker argued with Quarrels and threatened to "beat [Quarrels's] ass." However, Walker was unarmed and was outside Quarrels's car. A refusal to move a car and stating that she would beat Quarrels's ass was not adequate provocation for Quarrels to shoot an unarmed person standing outside Quarrels's car when Quarrels simply could have driven away. Instead, this situation meets the criteria under MCL 777.36(1)(b) that Quarrels acted with an unpremeditated intent to kill or create a very high risk of death. Therefore, the trial court did not abuse its discretion when it assessed 25 points for OV 6.

-4-

Finally, Quarrels argues that the trial court improperly assessed 10 points for OV 12 when it should have assessed zero points. A trial court assesses 10 points for OV 12 when "[t]hree or more contemporaneous felonious criminal acts involving other crimes were committed . . . ." MCL 777.42(1)(c). A trial court assesses no points for OV 12 when "[n]o contemporaneous felonious criminal acts were committed . . . ." MCL 777.47(1)(g). To be considered contemporaneous, the conduct must "occur[] within 24 hours of the sentencing offense" and "has not and will not result in a separate conviction." MCL 777.42(2)(a)(*i*)-(*ii*). When assessing points for OV 12, the trial court "must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010). "A trial court may consider facts concerning uncharged offenses, pending charges, and even acquittals, provided that the defendant is afforded the opportunity to challenge the information and, if challenged, it is substantiated by a preponderance of the evidence." *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007). Further, the trial court may consider evidence admitted at trial during sentencing. *Id*.

Quarrels's sentencing conviction was second-degree homicide. At sentencing, the prosecution asserted that four contemporaneous uncharged criminal acts accompanied the sentencing conviction, including the discharge of a firearm from a motor vehicle; receiving, and concealing a stolen firearm; tampering with evidence; and resisting and obstruction.

Quarrels asserts that the trial court could not consider tampering with evidence. A person tampers with evidence when they "[k]nowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding." MCL 750.483a(5)(a). An individual who commits this act is guilty of a felony. MCL 750.483a(6)(a). At sentencing, the prosecution presented the argument that the gun was lost or destroyed during the car ride. Quarrels's mischaracterizes the prosecution's argument regarding this variable at sentencing. When the prosecution referred to the gun as "lost," it referred to the testimony at trial that Quarrels may have tossed the gun out the window after leaving the scene of the shooting. This act is sufficient for the trial court to hold that Quarrels committed the uncharged act of tampering with evidence. Therefore, the trial court properly considered tampering with evidence as uncharged conduct under OV 12.

It did not properly consider the remaining uncharged conduct, however. Indeed, on appeal the prosecution agrees that discharge of a firearm from a motor vehicle could not be considered under this variable because such conduct arose from the same act as the second-degree murder conviction. See *Light*, 290 Mich App at 726. Furthermore, the uncharged conduct of resisting and obstructing occurred more than 24 hours after the homicide, so it could not be considered under OV 12. See MCL 777.42(2)(a)(*i*)-(*ii*). Finally, although evidence in the record supports a finding that Quarrels received a stolen handgun, nothing in the record supports a finding that Quarrels received the handgun within 24 hours of the sentencing offense. See MCL 777.42(2)(a)(*i*). The gun was reported stolen sometime within the three months between when the owner purchased the gun and when Quarrels shot Walker, but that date was not provided in the record. Therefore, the trial court erred when it relied on the uncharged conduct of receiving and concealing a stolen firearm for OV 12.

In sum, the trial court erred when scoring PRV 7 and OV 12. The error in Quarrels's PRV total score did not change her sentencing guidelines grid. Quarrels remains at PRV Level D.

However, the error in assessing OV 12 changes Quarrels's total OV score because it results in the subtraction of nine points from Quarrels's OV Level, placing her at a sum of 96 points. As a result, Quarrels should have been scored at OV Level II. See MCL 777.61. Because a correct scoring of OV 12 results in a lower guidelines range, Quarrels is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006).

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Michael J. Kelly