*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EXZAVIER LAMAR LEWIS,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2026
9:37 AM

No. 371584
Wayne Circuit Court
LC No. 21-006470-01-FC

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (incapacitated/physically helpless victim).[1] The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to serve 3 to 22.5 years in prison. We affirm defendant's conviction, reverse defendant's sentence, and remand to the trial court to resentence defendant under correctly scored sentencing guidelines.

## I. FACTS

This case arises out of the victim's claim that defendant sexually assaulted her while she was asleep in her bed. On the night of the incident, the victim's daughter, Ashley Byrd, borrowed the victim's vehicle and left the victim's house to see her ex-boyfriend, defendant. Byrd drove defendant to the store then to defendant's cousin's house where they had something to drink. Byrd recalled getting back into the vehicle with defendant, but her next memory was at about 4:30 or 5:00 a.m., when she woke up in the vehicle's driver's seat—alone—with about 20 missed calls.

---

[1] The jury found defendant not guilty of: (1) two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) (during a home invasion/felony); (2) one count of CSC-III, MCL 750.520d(1)(b) (force or coercion); (3) one count of first-degree home invasion, MCL 750.110a(2); and (4) one count of unlawfully driving away a motor vehicle, MCL 750.413.

Meanwhile, the victim went to bed at about 11:00 or 11:30 p.m. The victim awoke to a "sensation" near her vagina, a weight upon her, and hair dangling down onto her. The victim clarified that the "sensation" that she felt was the man's mouth, and at one point, the man "tried to insert [his] penis inside of [her]," but "the beginning of the tip point" was the only part that entered her vagina. The victim pushed the man off her, chased him through her house, and watched him exit her side door, enter her vehicle with Byrd unalert in the passenger seat, and speed out of her driveway. At 2:10 a.m., the victim called the police and was taken to the hospital for a sexual assault examination.

An expert in forensic DNA analysis testified that there was "very strong support" that defendant contributed to the DNA material on both of the swabs taken from the victim's labia majora, which is "one of the outer layers" of the vagina. Cell phone records also showed that defendant's phone was physically located near the victim's house shortly before the victim called the police. Although defense counsel raised a consent-defense in her opening statement, defendant chose not to testify in this case.

Defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

## II. INEFFECTIVE ASSISTANCE

Defendant first argues that defense counsel was ineffective for failing to present a consent-defense or impeach witness testimony. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because defendant did not raise these ineffective-assistance claims in the trial court or in a motion to remand for an evidentiary hearing in this Court, they are not preserved for appellate review. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) (quotation marks and citation omitted), amended 481 Mich 1201 (2008). But when a claim of ineffective assistance of counsel is not preserved, "our review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

## B. ANALYSIS

In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a two-prong test that a defendant must meet to prove that his or her counsel's assistance was so defective as to require a new trial. The test is as follows:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Id*.]

Stated more simply, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To show that a counsel's performance was deficient, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*

Because there are countless ways to provide effective assistance in a given case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (quotation marks and citation omitted). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (quotation marks and citation omitted), vacated in part on other grounds 493 Mich 864 (2012). This Court has further stated that

> a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission. [*Id*. at 22-23.]

## 1. CONSENT DEFENSE

Defendant first argues that defense counsel was ineffective for failing to present a consent-defense. This argument lacks merit.

In defense counsel's opening statement, she argued that the sexual encounter between defendant and the victim had been entirely consensual; she even recited a version of the alleged consensual events. At the end of the trial, defense counsel requested that the trial court include a jury instruction regarding consent, reasoning that although defendant did not testify, "[t]here's been enough on this record to indicate that, our defense is, consent." The trial court denied that request, stating that there was no evidence of consent in the record. The trial court also stated that defense counsel could not argue consent in her closing argument because "she can only argue evidence, facts and evidence." Nevertheless, during her closing argument, defense counsel argued that the prosecutor had "not presented anything that proves that this was a sexual assault. That this was not consensual. That this was forced." The prosecutor objected, and the trial court instructed the jury as follows: "Ladies and gentlemen, the only thing that a[n] attorney can argue,

-3-

in closing, is something that comes from the evidence. And even though the attorneys' arguments are not evidence, there was no evidence in this trial of consent. Okay? No evidence presented."

Accordingly, defense counsel made a serious effort to include a consent defense at trial. Defendant's appellate counsel argues that there was no tactical reason for defendant to not testify given that "[h]e, and he alone, could testify to consent." But "the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Defense counsel's performance cannot be considered defective simply because defendant chose not to exercise his right to testify; in fact, defense counsel's acquiescence to defendant's constitutional decision displays that she was exercising reasonable professional judgment. See *Strickland*, 466 US at 687, 690.

Furthermore, although "consent can be utilized as a defense to negate the elements of force or coercion" associated with a CSC charge, *People v Waltonen*, 272 Mich App 678, 689; 728 NW2d 881 (2006), a consent defense is not available for a CSC-III charge under MCL 750.520d(1)(c) because consent requires that a person agree to a sexual act freely and willingly, whereas a person who is "mentally incapable, mentally incapacitated, or physically helpless," pursuant to MCL 750.520d(1)(c), is not able to willingly agree to a sexual act. See MCL 750.520a(j), (k), and (m). Therefore, because defendant was only convicted of one count of CSC-III, pursuant to MCL 750.520d(1)(c) (incapacitated/physically helpless victim)—a charge for which consent is not a valid defense—defendant cannot prove that he was prejudiced by the lack of a consent defense in this case. See *Strickland*, 466 US at 687, 694.

## 2. IMPEACHMENT

Defendant further argues that defense counsel was ineffective for failing to properly impeach Byrd's testimony with a Cash App document. This argument lacks merit.

During cross-examination, Byrd: (1) testified that after the incident, defendant had texted her, but she had not texted him; and (2) denied ever sending defendant a request for money on Cash App. In an effort to impeach Byrd's testimony, defense counsel attempted to introduce a document purportedly showing that about three weeks after the incident, Byrd sent defendant a request for $20 on Cash App. After the prosecutor stated that she had never seen the document before, the trial court dismissed the jury. Defense counsel stated that defendant's previous trial counsel texted her the document—a screen shot of the alleged request—at 9:00 a.m. the morning of trial. The trial court told defense counsel that she should have promptly shown the document to the prosecutor, and the prosecutor argued that she would have attempted to verify the request had she known that the screen shot existed. The trial court then inspected the document and asked how defense counsel knew that it was a request sent to defendant considering that it did not name who the request was sent to. Defense counsel stated that she did not know, but that her detective was going to look into it. The trial court responded as follows: "So, that's the end of that. There's nothin[g] on there that says that twenty dollars was to your client. Nothing. That just says she Cash Apped twenty dollars. That's it. So, it's not, it's not impeachment." The trial court further found that the document was not relevant to the case considering that "there's nothing on there that says anything that had to do with your client, at all."

After the parties returned from their lunch break, defense counsel stated that she had reviewed defendant's Cash App activity log and verified that Byrd did in fact send the request to defendant. Defense counsel argued that the documents showed that contrary to Byrd's testimony, she continued to have contact with defendant after the incident. The trial court and the parties engaged in a lengthy discussion regarding whether extrinsic evidence could be used to impeach a witness on a collateral matter and whether the matter was in fact a collateral matter. The trial court ruled that because this issue had "nothin[g] to do with the sexual assault," it was a collateral issue, and there was no impeachment on collateral issues. The trial court then brought the jury back into the courtroom and stated as follows: "All right. Uhm, uhm, any—jurors, any, uh, testimony regarding any possible Cash App, or whatever, is to be stricken from the record. It's not relevant to the case. All right. Move on."

Accordingly, defense counsel made a serious effort to impeach Byrd with the Cash App document. But even assuming, arguendo, that defense counsel provided deficient performance by not promptly sharing the Cash App document with the prosecutor, defendant cannot meet the second prong of the *Strickland* test—prejudice to the defense.

On appeal, defendant argues that "had defense counsel been properly prepared for trial [by timely presenting the Cash App document to the prosecutor], the Cash App evidence would have been admitted." Yet defendant provides no law in support of that statement and instead contradicts his position by: (1) conceding that "the judge's rulings on notice and relevance may have been correct," and (2) arguing that defense counsel should have raised the issue outside the jury's presence to avoid the appearance that defense counsel acted improperly. When claiming ineffective assistance because of defense counsel's unpreparedness, a defendant must show prejudice resulting from the lack of preparation. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). In this case, defendant concedes that the trial court's evidentiary ruling may have been correct, and defendant does not provide any argument or caselaw to the contrary. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). Accordingly, defendant has failed to show that counsel's timeliness in sharing the evidence would have resulted in a different outcome, and therefore, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694.

## III. PROSECUTORIAL ERROR—INEFFECTIVE ASSISTANCE

In a Standard 4 brief,[2] defendant further argues that he was denied a fair trial because of an error contained in the prosecutor's closing argument, and that defense counsel was ineffective for failing to: (1) object to such error, (2) ask the trial court to determine how many jurors saw the statement, and (3) request a mistrial. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

---

[2] See Administrative Order No. 2004-6, 471 Mich ci, cii, Standard 4 (2004).

Because defense counsel contemporaneously objected to the alleged instance of prosecutorial impropriety, that issue is preserved for appellate review. See *Unger*, 278 Mich App at 234-235. "Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Further, allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Id*.

Because defendant did not raise his alternative ineffective-assistance-of-counsel claims in the trial court or in a motion to remand for an evidentiary hearing in this Court, they are not preserved for appellate review. See *Abcumby-Blair*, 335 Mich App at 227; *Sabin*, 242 Mich App at 658. When a claim of ineffective assistance of counsel is not preserved, "our review is limited to errors apparent on the record." *Unger*, 278 Mich App at 253.

## B. PROSECUTORIAL ERROR

As an initial matter, we submit that the term "prosecutorial error" is more appropriate than the term "prosecutorial misconduct" in this case. See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) ("Although we recognize that the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, we agree that the term 'misconduct' is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct.") (citations omitted).

"Generally, to prevail on a claim of prosecutorial misconduct, a defendant must show that he was denied a fair and impartial trial." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the resulting conviction a denial of due process." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014) (quotation marks and citation omitted). "We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Id*. at 62-63. "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "A defendant is entitled to a fair trial, not a perfect one." *Solloway*, 316 Mich App at 201.

In this case, after the parties finished presenting their closing arguments, and the jury was excused from the courtroom, defense counsel made a record about a specific slide that was contained in the prosecutor's closing-argument slideshow; defense counsel noted that the slide stated that "defendant admitted to a sexual act." After reviewing the slide, the prosecutor agreed that there was "a slide that says, yes, D.N.A. identifies him. And then, it did have the, he admits to sexual acts. And it—I do know what you're saying now. And I clicked it, really fast, past it." The prosecutor apologized, acknowledging that although that portion of the slide was meant to stay "hidden," it was shown to the jury. Defense counsel acknowledged that the slide was shown quickly and that the prosecutor did not intentionally display the statement. The trial court asked defense counsel what she wanted to do, and she responded that she "just want[ed] to put that on the record" because defendant was concerned when he saw it. The trial court asked defense counsel if she wanted the court to tell the jury that there was no admission by defendant, and defense counsel stated that the court could do "whatever [it] want[s]." The trial court again

questioned whether defense counsel wanted the court "to say somethin[g] to the jury, and point it out," and defense counsel responded, "No."

The prosecutor clearly erred by including the statement in her slideshow; the prosecutor even acknowledged as much on the record. But even though the prosecutor's statement was improper, any prejudice caused by the statement was alleviated by the trial court's jury instructions. See *People v Thomas*, 260 Mich App 450, 454-455; 678 NW2d 631 (2004) ("[T]he trial court instructed the jurors that they must decide the case on the evidence and that the remarks of counsel were not evidence. This instruction was sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks"). For example, the trial court instructed the jury that: (1) the jury had to start with the presumption that defendant was innocent; (2) it was the prosecutor's burden to prove the charges beyond a reasonable doubt; (3) the jury could not consider the fact that defendant had not testified; (4) the attorney's arguments were not evidence; and (5) the jury "should only accept the things the lawyers say that are supported by the evidence, or by your own common sense, and general knowledge." "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Moreover, defendant has failed to show that the jury's guilty verdict was made on the basis of the prosecutor's closing statements, opposed to the strong DNA and cell phone evidence in support of his guilt.

## C. INEFFECTIVE ASSISTANCE

Contrary to defendant's argument on appeal, defense counsel did object to the prosecutor's error. Although defense counsel discussed the error with the trial court and the prosecutor, she ultimately declined to have the trial court give the jury an additional instruction beyond the general instructions that attorney's arguments were not evidence. Defense counsel acknowledged that the slide was not intentionally injected into the case, and that it only appeared for a brief moment.

"Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *People v Klungle*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket Nos. 364125; 367795); slip op at 3 (quotation marks and citation omitted). Because there are countless ways to provide effective assistance in a given case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 US 668 at 689 (quotation marks and citation omitted). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *Gioglio*, 296 Mich App at 22 (quotation marks and citation omitted).

In this case, defense counsel chose to not draw the jury's attention back to the statement, which is reasonable considering that the slide was only shown for a brief moment and the statement was not read to the jury. "[T]here are times when it is better not to object and draw attention to an improper comment." *Unger*, 278 Mich App at 242 (quotation marks and citation omitted). "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Id*. at 242-243. Defendant has simply

failed to overcome the strong presumption that defense counsel's performance was strategic. Moreover, a "defendant is required to demonstrate prejudice to obtain relief on a claim of ineffective assistance." *Thomas*, 260 Mich App at 458. We conclude that "any minimal prejudice was alleviated by the trial court's instruction to the jury that the case was to be decided on the evidence and that the comments of counsel were not evidence." *Id*. Accordingly, defendant has not shown that there is a reasonable probability that, but for counsel's alleged deficient performance, the result of the proceeding would have been different. See *Unger*, 278 Mich App at 243.

## IV. CUMULATIVE ERROR

In a Standard 4 brief, defendant further argues that the cumulative effect of errors infringed on his right to a fair trial. The cumulative effect of several minor errors may warrant reversal even when individual errors in the case would not warrant reversal. *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). But because we find no error in defendant's jury trial, we also find that there was not cumulative error.

## V. SENTENCING—OV 19

Defendant further argues that he is entitled to resentencing because the trial court erred by relying on ex parte communications with the jury and improperly considering acquitted conduct when assigning 10 points for offense variable (OV) 19. We agree.

### A. PRESERVATION AND STANDARD OF REVIEW

"A claim that the sentencing guidelines range was improperly calculated is preserved by raising the issue at sentencing, in a motion for resentencing, or in a motion to remand." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). Because defense counsel objected to the assignment of 10 points for OV 19 at sentencing—arguing that defendant's actions did not constitute "flight" and emphasizing that the jury did not find defendant guilty of unlawfully driving away—this issue is preserved for appellate review. See *id*. "We review factual findings concerning the sentencing variables for clear error." *People v Hines*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 363151); slip op at 10. "Such findings must be supported by a preponderance of the evidence." *Id*. "Clear error exists when we are left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hines*, ___ Mich App at ___; slip op at 10-11 (quotation marks and citation omitted).

### B. ANALYSIS

"Although the sentencing guidelines are advisory, trial courts must still properly score the guidelines and must consider them when sentencing a defendant." *People v Dingee*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 365531); slip op at 10. A defendant is entitled to be resentenced if "there has been a scoring error or inaccurate information has been relied upon." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006).

"At their core, OVs seek to tailor a recommended sentence to a particular case." *People v Morris*, 22 NW3d 527, 528 (Mich, 2025) (quotation marks and citation omitted). "They do so by generating a sentencing range meant to reflect the particular facts of the case based on factors that the Legislature has deemed relevant to sentencing." *Id*. (quotation marks and citation omitted). At issue here is OV 19, which considers a "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. The assignment of 10 points for OV 19 is appropriate in cases in which the defendant "otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." MCL 777.49(c). Conversely, the assignment of zero points for OV 19 is appropriate in cases in which the defendant "did not threaten the security of a penal institution or court or interfere with or attempt to interfere with the administration of justice or the rendering of emergency services by force or threat of force." MCL 777.49(d). "A person interferes with the administration of justice if he or she does anything to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *Dingee*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted).

In this case, defendant's sentencing information report assigned zero points for OV 19. Nevertheless, the prosecution requested that 10 points be assigned for OV 19. Defense counsel argued that that defendant's actions did not constitute "flight" and emphasized that the jury did not find defendant guilty of unlawfully driving away. The trial court responded as follows:

> But he was found not guilty of that, and the Court spoke to the jury, only because they thought that the daughter might have allowed him to drive the car.
>
> That's where they hung up.
>
> It's not that they didn't think it was him.
>
> '[Be]Cause clearly, they thought it was him, [be]cause they found him guilty of the sexual conduct.
>
> What they said, is, when they, when he got in the car, is they weren't sure that the daughter had allowed him to drive the car.
>
> And that's what they, it, it wasn't a issue that they didn't believe it was him.
>
> It was the issue that they thought the daughter might have given him permission.
>
> So, well, the Court having presided over it, the victim had indicated that this, that [defendant], when she pushed him off of her, he took off running.
>
> And she chased him.
>
> And he fled the house.

He ran through the house, out the side door, jumped in her car, which she did not give him permission to get in, and drove off, with her daughter in it.

And there was testimony.

There was testimony about the phones.

They were together, at some point, at the same area where the young lady woke up.

And then, his phone left.

So, and the flight instruction was given, at trial.

So that bein[g] the case, the Court will score, uhm, for flight.

Accordingly, the trial court assigned 10 points for OV 19. As an initial matter, a plain reading of OV 19 does not support the trial court's assignment of 10 points. The record is clear that when assigning 10 points for OV 19, the trial court considered defendant's alleged flight from the crime scene as an interference or attempted interference with the administration of justice. See MCL 777.49(c). The trial court relied on the victim's testimony that when she pushed defendant off her, he ran through her house, exited the side door, entered the victim's car, and drove off. In *People v Hershey*, 303 Mich App 330, 343-344; 844 NW2d 127 (2013), this Court explained that

> [d]ecisions of both this Court and our Supreme Court have held the following conduct to constitute an interference or attempted interference with the administration of justice: providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, fleeing from police contrary to an order to freeze, attempting to deceive the police during an investigation, interfering with the efforts of store personnel to prevent a thief from leaving the premises without paying for store property, and committing perjury in a court proceeding.

In this case, there was no interfering with the administration of justice when defendant simply fled the victim's house; indeed, he did nothing to "hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *Dingee*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). To conclude that defendant's decision to leave the scene of the alleged crime is akin to fleeing the police or providing the police with a false name to derail their investigation, see *Hershey*, 303 Mich at 343-344, is a great stretch. If this were true, every alleged perpetrator would be assigned 10 points under OV 19 for not staying at the site of the alleged criminal act. This is not what OV 19 is intended to address.

On appeal, defendant argues that he is entitled to resentencing because the trial court erred by relying on ex parte communications with the jury and improperly considering acquitted conduct when assigning 10 points for OV 19. We also agree.

In *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019), the Michigan Supreme Court held that "due process bars sentencing courts from finding by a preponderance of the evidence that

-10-

a defendant engaged in conduct of which he was acquitted." The Court explained that "when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent." *Id*. at 626. Accordingly, "[t]o allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." *Id*. at 626-627 (quotation marks and citation omitted).

This Court has since held that although trial courts retain jurisdiction to consider uncharged conduct at sentencing, "trial courts cannot make factual findings at sentencing based on 'acquitted conduct,' " meaning "any conduct . . . underlying charges of which [the defendant] had been acquitted." *People v Beesley*, 337 Mich App 50, 61-62; 972 NW2d 294 (2021) (quotation marks and citation omitted; alteration in original). This Court has clarified that "a sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction," *People v Ventour*, 349 Mich App 417, 434; 27 NW3d 660 (2023) (quotation marks and citation omitted), and "if the sentencing court specifically reference[s] acquitted offenses as part of its sentencing rationale, a *Beck* violation [is] apparent," *Beesley*, 337 Mich App at 63 (quotation marks and citation omitted). This Court specifically "look[s] at the conduct actually disputed at trial to determine the basis of the jury's acquittal and whether the evidence the trial court considered at sentencing was consistent with that acquittal." *People v Boukhatmi*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 363998); slip op at 6.

For example, in *People v Jackson*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 366078); slip op at 4, the defendant was charged with, and acquitted of, felonious assault and felony-firearm. This Court explained that "[t]his reflects that the jury was not convinced beyond a reasonable doubt that defendant possessed, nor used, a firearm." *Id*. Accordingly, this Court held that "[b]ecause the trial court's scoring of OVs 1 and 2 required that defendant had used, or at least possessed, a firearm in his assault on [the victim], both of those OVs should have been scored at zero." *Id*.

In this case, the jury found defendant not guilty of unlawfully driving away, which embodied the trial court's consideration of defendant's alleged flight from the crime scene. The trial court acknowledged that defendant was charged with, and acquitted of, unlawfully driving away a motor vehicle, pursuant to MCL 750.413.[3] But the trial court explained that the jurors later informed the court that they only found defendant not guilty of that offense "because they thought that [Byrd] might have allowed [defendant] to drive the car." Nevertheless, because: (1) "a sentencing court may not rely *even in part* on acquitted conduct when imposing a sentence for the defendant's conviction," *Ventour*, 349 Mich App at 434 (quotation marks and citation omitted; emphasis added); and (2) a sentencing court's reference to acquitted offenses as part of its sentencing rationale is an indicator of a *Beck* violation, *Beesley*, 337 Mich App at 63, we conclude

---

[3] The essential elements of unlawfully driving away a motor vehicle are as follows: "(1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done wilfully, and (4) the possession and driving away must be done without authority or permission." *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993), aff'd 446 Mich 435 (1994).

that defendant is entitled to resentencing. As indicated in *Beck*, 504 Mich at 626-627 (quotation marks and citation omitted), "[t]o allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." Therefore, the trial court erred by considering such acquitted conduct at sentencing, and defendant is entitled to resentencing. See *Beck*, 504 Mich at 626-627, 629; *Ventour*, 349 Mich App at 434; *Beesley*, 337 Mich App at 63; see e.g., *Jackson*, ___ Mich App at ___; slip op at 4.

## VI. CONCLUSION

We affirm defendant's convictions, reverse defendant's sentence, and remand to the trial court to resentence defendant under correctly scored sentencing guidelines. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi